**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

HITT CONTRACTING, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

Civil Action No. 07-823C
(Chief Judge Damich)

**PLAINTIFF'S STATEMENT OF PROPOSED UNCONTROVERTED FACTS**

Plaintiff, Hitt Contracting, Inc., states the following as its proposed uncontroverted facts:

1. On March 24, 2003, AOC awarded the West Refrigeration Plant Expansion project to Hitt. (Appeal File, Exhibit 1)[1]

2. By subcontract dated May 15, 2003, Hitt hired Anderson to perform earthwork and demolition on the project. (Appeal File, Exhibit 2)

3. Anderson's scope of work required it to remove large quantities of soil material from the project. This material was removed by dump truck. The dump trucks were not operated by Anderson's employees. Anderson hired the trucks and drivers either directly, or through a trucking broker who would supply an agreed number of trucks on a given day. The trucks that were hired to participate in the hauling operation would report to the job site in the morning. After being loaded, they would haul their

[1] References to the "Appeal File" are to the Rule 4 Appeal File from the proceeding before the Board of Contract Appeals.

load to a dump site located in southern Maryland and return to the project to pick up another load. Before reporting to the site in the morning, and before returning to pick up each load, the dump trucks were required to be inspected. Anderson paid for all of the trucking of non-contaminated soil based on hourly rates established with its trucking subcontractors. It paid for trucking of contaminated soil on a per ton basis. (Affidavit of Jason Brown)[2]

4. Anderson commenced performance of its subcontract work on or about May 22, 2003. (Affidavit of Jason Brown)

5. From May 22, 2003 until approximately June 12, 2003, the vehicle security inspections required by Hitt's general contract took place at the guarded security station at the entrance to the project along Virginia Avenue. (Affidavit of Jason Brown)

6. On or about June 13, 2003, the inspection requirements changed.[3] On that day, The United States Capitol Police directed Anderson to send all vehicles entering the project site to the Capitol Police inspection station for the Capitol Visitor Center project located at 3rd St. and Constitution Avenue NW. The new inspection station was located many blocks from the entrance to the West Refrigeration project.[4] After being inspected, each truck would be provided with a placard showing the time of inspection. The truck then had 15 minutes to report to the project site. If it took the truck more than 15 minutes to get to the project entrance, it would have to return to the inspection station. (Affidavit of Jason Brown).

---

[2] Jason Brown's affidavit is attached as Exhibit 1. The original affidavit was submitted to the Board.
[3] Hitt does not know why the change was made and was unable to question the Capitol Police about it because they would not consent to a deposition in the hearing before the Board.
[4] A map showing the location of the inspection station and the location of the West Refrigeration project entrance is attached as Exhibit 2. The inspection station is circled. Two "x's" mark the project entrance.

6. Because Anderson was hauling the material to dump sites located in southern Maryland, the change in inspection location required Anderson's truckers to take a substantially different and longer route to the project site. As a result, the time required to dispose of each load of material increased. Because Anderson paid the trucks by the hour, its direct costs increased as well (Affidavit of Jason Brown).

7. On June 13, 2003, Anderson notified Hitt that the change in inspection location constituted a change to its subcontract (Appeal File, page 75).

8. On April 11, 2005 AOC issued its contracting officer's final decision denying the claim for increased trucking costs due to the change in inspection location (Appeal File, Exhibit 3 page 51)[5].

9. Hitt appealed the decision to The House Office Building Committee Board of Contract Appeals.

10. By decision dated May 30, 2007, The Board granted summary judgment in favor of AOC against Hitt.[6]

Respectfully submitted,

/s/ M. Joseph Pierce___________

M. Joseph Pierce, Esquire
Kasimer & Annino, P.C.
7653 Leesburg Pike
Falls Church, VA 22043
Telephone: 703-893-3914
Facsimile: 703-893-6944
Email: jpierce@kasannlaw.com

Dated: March 26th, 2008

[5] A copy of the decision is attached as Exhibit 3
[6] A copy of the decision is attached as Exhibit 4

**CERTIFICATE OF FILING**

I hereby certify that on the 26th day of March, 2008 a copy of the foregoing Plaintiff's Statement of Proposed Uncontroverted Facts was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ M. Joseph Pierce________

P:\Docs\Anderson\Hitt Contracting\AOC\Court of Claims\pleadingss\statement uncontroverted facts.032508.doc

# EXHIBIT 1

CONTRACT APPEALS BOARD
HOUSE OFFICE BUILDING COMMISSION
411 G Street, N.W.
Washington, D.C. 20548

| | |
|---|---|
| APPEAL OF: :<br>HITT CONTRACTING, INC. :<br>(The Anderson Company, L.L.C., :<br>Subcontractor) :<br>AOC Contract No. 0300012 : | CAB No. 2006-1 (HOBC) |

## AFFIDAVIT OF JASON BROWN

1. I am over the age of 18 and competent to testify as to the matters set forth herein.

2. I am currently employed by The Anderson Company, LLC ("Anderson") as a Division Manager. Prior to that, I was a Project Manager with Anderson.

3. By subcontract dated May 15, 2003, Hitt hired Anderson to perform earthwork and demolition on the West Refrigeration Plant Expansion project. I served as Anderson's project manager on that project.

4. Anderson's scope of work required it to remove large quantities of soil material from the project. This material was removed by dump truck. The dump trucks were not operated by Anderson's employees. Anderson hired the trucks and drivers either directly, or through a trucking broker who would supply an agreed number of trucks on a given day. The trucks that were hired to participate in the hauling operation would report to the job site in the morning. After being loaded, they would haul their load to a dump site located in southern Maryland and return to the project to pick up another load. Before reporting to the site in the morning, and before returning to pick up each load, the dump trucks were required to be inspected. Anderson paid for all of the

trucking of non-contaminated soil based on hourly rates established with its trucking subcontractors. Contaminated soil was hauled based on a unit price per ton.

5. Anderson commenced performance of its subcontract work on or about May 22, 2003.

6. From May 22, 2003 until approximately June 12, 2003, the vehicle security inspections required by Hitt's general contract took place at the guarded security station at the entrance to the project along Virginia Avenue using dogs and mirrors.

7. On or about June 13, 2003, the inspection requirements changed. On that day, The United States Capitol Police directed Anderson to send all vehicles entering the project site to the Capitol Police inspection station for the Capitol Visitor Center project located at 3rd St. and Constitution Avenue NW. The new inspection station was located several blocks from the entrance to the West Refrigeration project. It was not within sight of the project After being inspected, each truck would be provided with a placard showing the time of inspection. The truck then had 15 minutes to report to the project site. If it took the truck more than 15 minutes to get to the project entrance, it would have to return to the inspection station.

8. The 3rd St and Constitution Avenue inspection facility was manned by the Capitol Police during defined hours. Anderson did not coordinate deliveries with the Capitol Police.

9. The change in inspection location required Anderson's truckers to take a substantially different and longer route to the project site. As a result, the time required to dispose of each load of material increased. Because Anderson paid the trucks by the

hour, its direct costs increased as well. For the contaminated soil, Anderson was required to pay a premium of $.50 per ton.

10. By letter of a June 13, 2003, Anderson notified Hitt that the change in inspection location constituted a change to its subcontract.

Jason Brown

COMMONWEALTH OF VIRGINIA:
COUNTY OF Prince William

Subscribed, sworn, and acknowledged before me, a Notary Public in the above referenced jurisdiction, on this 7 day of February, 2007 by Jason Brown.

Notary Public

My Commission Expires: 8-31-07

# EXHIBIT 2




BENNETT
DEPOSITION EXHIBIT
3
12-8-06
PENGAD 800-631-6989

# EXHIBIT 3

# CONTRACTING OFFICER'S FINAL DECISION

THE ARCHITECT OF THE CAPITOL
1793

Washington, DC 20515
April 11, 2005

CERTIFIED MAIL-RETURN RECEIPT REQUESTED
AND FACSIMILE

HITT Contracting, Inc. ("HITT")
2704 Dorr Avenue
Fairfax, VA 22031

ATTN: Mr. Jerry Brandmueller
Senior Project Manager

CONTRACT: West Refrigeration Plant Expansion
AOC Contract No. 0300012

SUBJECT: Request for Equitable Adjustment;
Off-Site Security Inspection Claim;
Contracting Officer's Final Decision

Gentlemen:

I have reference to HITT's request for a Contracting Officer's Final Decision in its letter dated February 8, 2005, as amended by its letters to this Agency dated February 16, 2005, and March 7, 2005. In reviewing this claim, I am also taking into account the assertions and proofs in HITT's related letters to this Agency dated December 9, 2003, April 29, 2004, and September 22, 2004, including all exhibits and attachments that were enclosed (collectively, the "Claim").

HITT's claim requests $243,256.50 (covering only the period ending December 31, 2004) as additional compensation for its dump trucks having to go through a Capitol Police checkpoint at the intersection of Third Street and Pennsylvania Avenue, N.W., about 6 - 7 city blocks from the job site at South Capitol and E Streets, S.E. In essence, HITT claims that the government requirement that the dump trucks go through a security checkpoint is a change-order, which HITT did not include in its pre-contract price offer, and for which HITT deserves additional compensation from the government.

Based on the facts and analyses herein below, HITT's Claim is hereby denied in its entirety.

## I. FINDINGS OF FACT - BACKGROUND INFORMATION

The subject contract between HITT and the Architect of the Capitol (the "Contract") has an approximate value of $70 million. Such contract is for the expansion of the U. S. Capitol West Refrigeration Plant. To fulfill its excavation duties, HITT entered into a subcontract with The Anderson Company, L.L.C. ("Anderson") with an approximate value of $2 million. The subcontract provides for Anderson to remove soil via dump trucks from the construction site. To complete its own duties, Anderson apparently subcontracted further with several dump-truck companies at hourly rate, varying by truck company. Anderson has sought the same $243,256.50 from HITT that HITT seeks from the Government in the instant Claim.

HITT had a recent prior contract with AOC for the AOC's Interim Coal Handling Facility, so HITT had actual knowledge and familiarity with AOC's offsite vehicle inspection requirements. Thus, at the time that HITT agreed to the subject contract with AOC, HITT knew the location of the dump-truck Capitol Police inspection checkpoint, as well as the process and the timing ("delay") of such security inspections.

### 1. Timeline Excerpts

#### A. *Pre-Bid & Award*

December 17, 2002: The Architect of the Capitol ("AOC") advertised the West Refrigeration Plant Expansion project in accordance with RFP No. 030012. As part of the advertisement process, the AOC provided prospective offerors with the project plans and specifications, the Schedule, the Contract General Conditions, Supplemental Conditions and Solicitation Conditions. These contract documents later became part of the Contract.

December 20, 2002: The AOC held a pre-proposal conference and briefed prospective offerors on the Solicitation Conditions. As part of the briefing on the Solicitation Conditions, the AOC urged prospective offerors to write the Contracting Officer about any questions arising from the contract documents prior to the proposal deadline of March 7, 2003.

December 17, 2002 - March 7, 2003: During this solicitation period, the AOC received 500 pre-bid questions, but not one pertained to the AOC security screening clearance procedures. AOC's answers to the 500 pre-bid questions are documented in Bid Amendments 1-5.

March 24, 2003: The AOC awarded the West Refrigeration Plant Expansion contract to HITT and issued a Notice to Proceed on April 9, 2003.

B. *Post Award*

April 10, 2003: The AOC held a pre-construction meeting and briefed HITT on the AOC general security requirements. There were no inquiries from HITT pertaining to the offsite vehicle-inspection process.

May 15, 2003: Date of HITT's subcontract with Anderson. In this subcontract, Anderson agreed that it was familiar with the HITT-AOC contract, and agreed to be bound by the HITT-AOC contract terms to the same extent as HITT [Anderson subcontract (attached to HITT's April 24, 2004 correspondence), p. 2, recital D; p. 2, par. 1.C.].

June 5, 2003: The AOC issued the Delivery Vehicle Information form for Capitol Police vehicle screening.

September 11, 2003: Letter from HITT to Hill International (consultant to AOC) stating that HITT's subcontractor, Anderson, had issued a claim against HITT for time and money, arising out of the means (travel delays) by which the incoming dump trucks were being inspected at the Capitol Police offsite inspection station.

December 9, 2003: HITT's letter to Hill International, attaching Anderson's formal request for an equitable adjustment from the Government for the incremental cost of the offsite-security truck inspections. The "claim" excludes any cost and/or time analysis performed by HITT.

December 21, 2003: AOC letter to HITT, advising HITT that AOC has no contractual relationship with Anderson, and therefore, cannot address or respond to issues brought forth directly by Anderson.

April 29, 2004: HITT letter to AOC requesting a contracting officer's final decision, but expressing uncertainty about the quantum of its "claim."

May 25, 2004: AOC letter to HITT identifying factual inadequacies on the face of HITT's April 29, "claim," and giving HITT the opportunity either to supplement its "claim" with additional factual information, or else to request a Final Decision based on the then-existing (incomplete) "claim."

September 22, 2004: HITT's letter to AOC, adopting a detailed "claim" attachment from Anderson. [This is noteworthy for containing an attachment with information from Anderson on why its claim should be paid.]

September 24, 2004: AOC's letter to HITT, requesting again certain records previously requested on May 25, 2004, but still not provided by HITT to AOC.

February 8, 2005: HITT's letter to AOC, attaching documents purporting to be Anderson's purchase orders issued to dump-truck companies. The documents included only an hourly rate from each truck-provider and do not include the number of hours, or the number of loads, or the delay by load. HITT requested a Contracting Officer's Final Decision.

February 16, 2005: HITT's letter to AOC, asserting that its Claim for the period ending on December 31, 2004, aggregates to $243,256.50.

March 7, 2005: HITT's letter to AOC, asserting the aggregate number of dump-truck arrivals affected, by month, asserting that each dump truck was delayed by 30 minutes, and multiplying that by the respective dump-truck cost per hour.

2. *Relevant Factual Information Not Found in "Claim"*

A. No load-by-load travel-time-delay logs

Despite requests for the same, the Claimant did not provide in its Claim a detailed log of how much (in minutes) each of the 1,500+ truckloads were delayed. Neither does the Claim state when each dump truck actually arrived at the Capitol Police truck-inspection gate, nor when each dump truck left the truck-inspection gate, nor when each dump truck arrived at the construction site (6 - 7 blocks away). Traffic during rush hours would seem to make the delay longer than traffic at quiet times, but there is no time-of-day travel-delay analysis in the Claim.

B. No accounting for the possible time savings

There is no accounting in the Claim for any travel-time savings, if any, achieved by having the truck-inspection checkpoint where it was (further northwest), rather than being immediately at the construction site. Even though there were dump trucks arriving from many companies from various directions, time-savings do not appear to have been analyzed in the Claim.

C. No measurement-based evidence of basis for the "30-minute delay" assertion

The sole basis for the assertion that the average dump truck was delayed by at least 30 minutes seems to be the certification by an Anderson executive in his letter dated November 25, 2003. [Found under HITT's letter to AOC dated September 22, 2004, which includes

Anderson's letter of September 1, 2004, which further includes the certified letter within its Exhibit B.] The certifier does not state the basis for his estimate of 30 minutes of delay per dump truck, and he does not assert that he made personal observations of the alleged delays.

D. No record of actual payments by HITT to Anderson for Anderson's alleged truck-inspection delays

For reasons detailed below ("Severin Doctrine"), AOC does not necessarily owe HITT for increases in Anderson's cost if such cost increases will never be passed through to HITT. Like the HITT contract with AOC, the Anderson contract with HITT has a "no damage for delay" clause that limits the remedies of Anderson. In other words, one would expect to find proof in the Claim that HITT has paid or will pay Anderson, if HITT indeed deserves to collect the same money from AOC. No such evidence of payment is in the Claim.

3. *Applicable Contractual Provisions From HITT-AOC Contract*

A. Solicitation Conditions, page 4, paragraph 4, entitled "INTERPRETATIONS"

> *Prospective offerors shall request the Contracting Officer, in writing, for an interpretation or correction of any ambiguity, inconsistency, or error in the contract documents which they may discover or which should have been discovered by a reasonably prudent offeror. . . . Requests for oral interpretations or any other interpretations not made by amendments will not be accepted, and any information that may possibly be gained by offerors in that manner is gratuitous and not binding.*

B. Supplementary Conditions, section 00800, paragraph 3.5, entitled "SPECIAL SECURITY REQUIREMENTS"

> *All vehicles, and contents, used by the Contractor or his subcontractors, which enter or leave United States Government property during performance of the work, will be subject to clearance, inspection and identification procedures conducted by the United States Capitol Police. Instructions and map(s) will be provided to the contractor upon award.*

C. Specification 01100-4, paragraph 1.6, entitled "SITE SECURITY"

> *A. (1) All personnel entering the Capitol Power Plant grounds will be required to check in at a security gate. (2) Special arrangements for all deliveries shall be arranged a minimum of 48 hours in advance of arrival to permit inspection by the*

*United States Capitol Police. Coordinate deliveries with the United States Capitol Police by contacting them at 202-224-0908.*

D. Specification 01110-2, paragraph 1.4, entitled "SITE USE BY CONTRACTOR AND SITE ACCESS"

*A. The construction drawings indicate space available for Contractor use.*
*B. Site access for the Contractor shall primarily occur from Virginia Avenue with limited use of the service entrance from E Street. All access shall be through guarded gates and allowed only to secure personnel.*

## II. ANALYSIS OF CLAIM

The Claim is essentially a government-delay claim to pay HITT (and Anderson) its costs of driving the dump trucks to the dump-truck inspection site (6 - 7 blocks from the construction site) before driving to the construction site. The Claim requests money for only the dump truck travel time between the inspection site and the construction site, but not for the time that each dump truck was going through inspection. [This is because the dump truck would have had to endure an inspection, whether the inspection site was a few blocks away or whether the inspection site was at the construction site gate.]

Because it does not take 30 minutes on average to drive a truck 6 - 7 blocks from the inspection site to the construction site, there is a lingering question in this case whether the Claim is truly motivated by recovering the time-costs of the truck-inspection itself, including waiting in line, rather than the time-costs of traveling from the inspection site to the construction site. [The truck-inspection itself, without travel time, but including waiting time, can require (on the order of magnitude of) 30 minutes per truck visit.]

The primary analytical bases for this Final Decision are as follows:

1. <u>The Contract wording does not state that dump-truck inspection will be at the construction-site gate, and, in fact, suggests that there will be a separate location for the dump-truck inspection.</u>

If the truck inspections were at the construction-site gate, then there would be no need for "instructions and map(s)" to be provided to the contractor. Contract, Supplementary Conditions, Section 3.5. The fact that there may be entry gates and Police inspecting government vehicles at the construction site does not mean that non-governmental dump trucks can use such gates without first having gone through the offsite (but nearby) vehicle inspection facility.

2. HITT, via its current experience in performing AOC's Interim Coal Handling Project (at the same approximate location as the instant Contract), and via its familiarity with the sole Capitol Police dump truck inspection location and procedures, should be barred (i) from arguing that HITT was unaware of delays associated with truck inspections and (ii) from arguing that HITT did not price such delays into its pre-award price bid.

There is no question that HITT had another major prior contract for work at the Capitol Power Plant location, so it is difficult to conclude that HITT was unable to price the travel time and the security delays into its bid for the instant Contract. At the time it bid, HITT had actual knowledge of the Capitol Police dump truck inspection procedures and location.

3. The "no damages for delay clause" in this Contract is enforceable here and serves to bar HITT's monetary Claim against AOC.

There is a "no damages for delay clause" in the Contract, General Conditions, Article 14. Generally, "no damages for delay" clauses provide that if the contractor (here, HITT/Anderson) is delayed in the performance of the work by an act of the owner (here, AOC), then the contractor is entitled to an extension of time for performance of the contract, but not to recover damages for government delay. James Acret, Construction Litigation Handbook, § 7:8 (2d ed. 2003).

"No damage for delay" clauses have been enforced in circumstances similar to those here: Allen-Howe Specialties Corp. v. U.S. Const., Inc., 611 P.2d 705 (Utah 1980)(subcontractor claim on building project made inefficient because of jobsite congestion); Frank T. Hickey, Inc. v. Los Angeles Jewish Community Council, 276 P.2d 52 (2d Dist. 1954) (claim for delay and extra work caused by hauling excavated material to a more distant disposal site).

4. The "no damages for delay clause" in the HITT-Anderson contract will prevent Anderson from recovering from HITT for delay, absent active interference of AOC against Anderson.

The HITT-Anderson contract also contains a "no damages for delay clause:"

> *Under no circumstances shall Contractor [HITT] be liable to Subcontractor for damages resulting from delays or acceleration of the work or loss of productivity. Contractor's liability to Subcontractor is strictly limited to allocation of damages recovered from and time extensions allowed by the Owner for the Subcontractor Scope of Work. Time extensions shall be Subcontractor's sole remedy for delays caused solely by the Contractor.* (p. 5, Article 6.E.)(emphasis added)

Thus, if Anderson is barred from winning a monetary delay claim against HITT, then Anderson is also barred from passing through a monetary delay claim to AOC. HITT's Claim contains no allegation that AOC actively interfered with Anderson's work.

5. The Claim's lack of documentation (supporting each alleged dump truck inspection travel delay) indicates in favor of denying the subject Claim.

Claimant does not tell us when each delay started and when each delay stopped, so the methodology of calculating travel delay is suspect. Claimant seems not to have measured any of these alleged travel delays. The estimate of the delays seems to be derived from a mental hypothesis by an Anderson executive who was not physically present to observe any such delay. In other words, the burden of proof has not been met for paying such a claim. We cannot determine the soundness of the Claim's damage numbers because they consist of either armchair estimates or of recollections which are not based on contemporaneous records.

6. The "Severin Doctrine" (of law) applies and bars Anderson's Claim Via HITT.

The Severin Doctrine permits the pass-through of claims from subcontractor to the Government only when actual damages have been sustained by the contractor. Severin v. United States, 99 Ct. Cl. 435 (1943). If actual damages to the prime contractor (here, HITT) have been shown, then the prime contractor may assert a claim against the government and prevail. In the instant case, since the HITT-Anderson subcontract has a "no damage for delay clause," HITT may never have to pay Anderson for delay. Indeed, according to the HITT-Anderson subcontract, HITT is liable to Anderson for damages or delays only to the extent the damages are accepted or allowed by the "owner" (here, AOC). Subcontract, p. 5, Article 6.D. and 6.E. Since HITT has not retained liability to pay Anderson in the future, HITT may not prevail against AOC in HITT's pass-through Claim. James Reeves Contractor, Inc. v. United States, 31 Fed. Cl. 712, 714-15 (1994).

7. The failure of HITT to raise the subject travel-delay issue during the pre-award interpretation period indicates against sustaining the instant Claim.

For reasons already mentioned, HITT was well aware of the Capitol Police truck-inspection locations and policies, and of their respective travel delays. HITT's failure to raise the issue at the time (prior to award) indicates against sustaining the Claim. HITT did not suddenly, after the award, learn that it takes time to drive to and to go through the Capitol Police inspection station.

## III. CONCLUSION

For the aforesaid reasons, I conclude that HITT's offsite construction vehicle security screening was required by the relevant contract specifications, and that therefore HITT is entitled to no additional Government money for driving its dump trucks through the Capitol Police offsite checkpoint before entering the Capitol Power Plant job site.

This is the Final Decision of the Contracting Officer. You may appeal this decision to the AOC Congressional Committees with jurisdiction over the Capitol Power Plant, pursuant to the Disputes Clause in the subject Contract. If you decide to appeal, then you must, within 90 days from the date that you receive this decision, mail or otherwise furnish written notice to the Congressional Committees with jurisdiction and provide a copy to the Contracting Officer from whose Decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this Decision, and identify the contract by number. Instead of appealing this decision administratively, you may bring an action directly in the United States Court of Federal Claims within 12 months of the date that you receive this Decision.

Sincerely,

Cynthia J. Bennett
Director, Procurement Division

cc: M. Keegan, AOC Contracting Officer's Representative
B. Hitt, HITT Contracting, Inc.

# EXHIBIT 4

JAMES A. SPANGENBERG
Chairman

GOVERNMENT ACCOUNTABILITY OFFICE
CONTRACT APPEALS BOARD
441 G Street, NW • Rm. 7182 • Washington, DC 20548
(202) 512-3342 • cab@gao.gov

DAVID A. ASHEN
Senior Member

| | | |
|---|---|---|
| Appeal of – | ) | |
| | ) | |
| Hitt Contracting, Inc. | ) | CAB No. 2006-1 (HOBC) |
| | ) | |
| Under Contract No. AOC-0300012 | ) | |

Appearance for the Appellant

Joseph H. Kasimer, Esq.
M. Joseph Pierce, Esq.
Kasimer & Annino

Mark S. Dachille, Esq.
Huddle & Jones

Appearance for the Respondent

C. William Groscup, Esq.
Vivian Katsantonis, Esq.
Mark A. Sgarlata, Esq.
Watt, Tieder, Hoffar and Fitzgerald

**DECISION**

Hitt Contracting, Inc. appeals the decision of the Architect of the Capital (AOC) denying its claim and seeks $278,331.50 in damages arising out of asserted changes in contract No. 0300012, for expansion of the West Refrigeration Plant of the U.S. Capitol Power Plant in Washington, D.C. Hitt asserts that a requirement for an off-site security inspection of dump trucks traveling to the work site amounted to a contract change for which it was entitled to additional compensation. This Board's jurisdiction over this

appeal is pursuant to the Disputes Clause in the contract and the appointment of the Board by House Office Building Commission.

AOC moves for summary judgment. Hitt opposes the motion. We grant AOC's motion for summary judgment.

**Background**

On December 17, 2002, AOC issued request for proposals (RFP) No. AOC-030012, for expansion of the West Refrigeration Plant between Virginia Avenue and E Street, SE, Washington, D.C. Rule 4 File (R4), Tab 3, Contracting Officer's Final Decision, April 11, 2005, at 52. The RFP included several provisions regarding site security and site access. RFP § 3.5, Special Security Requirements, Supplementary Conditions, provided as follows:

> All vehicles, and contents, used by the Contractor or his subcontractors, which enter or leave United States Government property during performance of the work, will be subject to clearance, inspection and identification procedures conducted by the United States Capitol Police. Instructions and map(s) will be provided to the contractor upon award.

R4, Tab 4, Special Security Requirements, at 62. RFP § 1.6, Site Security, Specification 01100-4, as issued, provided in relevant part as follows:

> A. Use of the site: During the construction period, the Contractor shall have use of the premises for construction activities as described below and elsewhere in the specifications.
>
> > 1. . . .
> >
> > 2. Clearance: Special arrangements for all deliveries shall be arranged a minimum of 48 hours in advance of arrival to permit inspection by the United States Capitol Police. The Police inspection station is on P Street and South Capitol Street SE.

R4, Tab 4, Site Security, at 63. RFP § 1.4, Site Use by Contractor and Site Access, Specification 01110-2, provided in relevant part as follows:

> B. Site access for the Contractor shall primarily occur from Virginia Avenue with limited use of the service entrance from E Street. All access shall be through guarded gates and allowed only to secure personnel.

R4, Tab 4, Site Use by Contractor and Site Access, at 64. In addition, the RFP included the AOC clause entitled "Interpretations (AOC) (SEP 1999)," at Section 4.1, Solicitation Conditions, which provided that: "Prospective offerors shall request the Contracting Officer, in writing, for an interpretation or correction of any ambiguity, inconsistency, or error in the contract documents which they may discover or which should have been discovered by a reasonably prudent offeror." R4, Tab 4, Interpretations, at 61. Neither Hitt, Anderson, nor any other firm requested AOC to clarify the vehicle security, screening, or inspection requirements. AOC Motion for Summary Judgment at 5-6; AOC Reply, February 26, 2007, Tab B, Deposition of Hitt Project Manager, at 156-58; AOC Motion, Tab A, Deposition of Anderson Project Manager for West Refrigeration Plant Expansion Project, at 92-93; Oral Arguments, March 9, 2007, at 69-70.

On February 3, 2003, AOC issued Amendment No. 3 to the RFP. R4, Tab 1, Hitt Contract, Amend. 3. Of relevance here, that amendment revised RFP § 1.6, Site Security, Specification 01100-4, deleting the above-quoted sentence reading "The Police inspection station is on P Street and South Capitol Street SE," and replacing it with the direction to "Coordinate deliveries with the U.S. Capitol Police by contacting them at 202-224-0908." R4, Tab 4, Site Security, at 63.

On March 24, 2003, AOC awarded contract No. 0300012 for the West Refrigeration Plant Expansion to Hitt. R4, Tab 1, Hitt Contract. On May 15, 2003, Hitt awarded a subcontract to The Anderson Company, L.L.C., for excavation, sitework and building demolition. R4, Tab 2, Anderson Subcontract, Scope of Work.

Anderson commenced performance of the subcontract awarded by Hitt on or about May 22, 2003. Hitt Opposition to Summary Judgment Motion, February 9, 2007, Tab 1, Affidavit of Anderson Project Manager for West Refrigeration Plant Expansion. Anderson's contract with Hitt required it to remove large quantities of soil material from the project site. *Id.* Anderson hired dump trucks and drivers, either directly or through a trucking broker, paying hourly rates for hauling non-contaminated soil and a unit price per ton for hauling contaminated soil. *Id.* Before reporting to the project site in the morning, and before returning to pick up a new load (after disposing of the prior loads in Southern Maryland), the dump trucks were subject to a vehicle security inspection. *Id.* From May 22, 2003, until approximately June 12, 2003, vehicle security inspections under the Hitt contract occurred at the guarded security station at the entrance to the project along Virginia Avenue using dogs and mirrors. *Id.* On or about June 13, 2003, the U.S.

Capitol Police directed Anderson to send all vehicles intending to enter the project site first to the U.S. Capitol Police inspection station for the U.S. Capitol Visitor Center building project at 3rd and Constitution Avenue, NW, approximately 6-7 blocks from the entrance to the West Refrigeration Plant Expansion on Virginia Avenue. *Id.*; R4, Tab 3, Contracting Officer's Final Decision, at 54, 56. After being inspected, the trucks were provided with a placard showing the time of inspection. Hitt Opposition to Summary Judgment Motion, February 9, 2007, Tab 1, Affidavit of Anderson Project Manager for West Refrigeration Plant Expansion. Each truck had a maximum of 15 minutes within which to report to the project site; if a truck arrived at the project site more than 15 minutes after the vehicle security inspection, the truck would have to return to the inspection station. *Id.*

By letter dated June 13, 2003, Anderson notified Hitt that it considered conducting the truck inspections at a location other than the project site to be a change in the contract; according to Anderson, this change added a minimum of 30 minutes to each roundtrip. R4, Tab 8, Letter from Anderson to Hitt, at 75. By letter dated November 25, 2003, Anderson formally requested Hitt to issue a change order on account of the off-site truck inspections. R4, Tab 11, Letter from Anderson to Hitt, at 87. Hitt then requested an equitable adjustment to its contract with AOC for the additional costs associated with the off-site security inspections; upon AOC's refusal, Hitt requested a final contracting officer's decision. R4, Tabs 14, 16, 22, 23. In response, on April 11, 2005, the Contracting Officer issued a "Final Decision" in which he denied the request for additional compensation on the basis that the off-site security inspection of the dump trucks used on the project was required by the contract. R4, Tab 3, Contracting Officer's Final Decision, at 59. Hitt appealed the contracting officer's decision on May 9, 2005.

On January 18, 2007, AOC filed a motion for summary judgment pursuant to Rule 6 of the applicable Rules of the Contract Appeals Board (April 2006), contending that there are no material facts in dispute, and that it is entitled to favorable judgment as a matter of law. As relevant to this decision, AOC asserts that Hitt's contract with the agency did not require that the vehicle inspections specified in the contract take place at the project site; rather, according to the agency, the contract instead provided for the vehicle

inspections to occur at a location to be determined by the U.S. Capitol Police. AOC Motion at 10-13.[1] In its opposition to the motion, Hitt asserts that when reasonably interpreted, the contract provided for inspections to occur at the project site and not off-site. Hitt Opposition at 6-7.

**Discussion**

Summary judgment is appropriate where no material facts are genuinely in dispute and the moving party is entitled to judgment as a matter of law. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). A material fact is one that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The facts are viewed in the light most favorable to the nonmoving party and doubts are resolved against the moving party. *American Pelagic Fishing Co., LP v. United States*, 379 F.3d 1363, 1371 (Fed. Cir. 2004). However, to counter a motion for summary judgment, more than mere assertions of counsel are necessary. *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984). The nonmoving party may not rest on its conclusory pleadings, but must set out, in affidavit or otherwise, what specific evidence could be offered at trial. Failure to do so may result in the motion being granted. Conclusory assertions do not raise a genuine issue of fact. *Id.*

Contract interpretation is a question of law, *Calif. Fed. Bank, FSB v. United States*, 245 F.3d 1342, 1346 (Fed. Cir. 2001); as a question of law, contract interpretation issues are generally amenable to summary judgment. *Varilease Technology Group, Inc. v. United States*, 289 F.3d 795, 798 (Fed. Cir. 2002). In interpreting a contract, a forum's fundamental objective is to ascertain the parties' intent and effectuate the purpose of their agreement. *P.R. Burke Corp. v. United States*, 47 Fed. Cl. 340, 346 (2000). In so

---

[1] AOC has also raised several other defenses to Hitt's appeal which the agency asserts also entitle it to summary judgment, including that: (1) the vehicle inspections were a "sovereign act" by another government entity (the U.S. Capitol Police); (2) any compensation was barred by a "no damages for delay clause" in Hitt's contract with AOC; (3) Hitt's claim was barred under the "Severin Doctrine" on the basis that Hitt was not liable to Anderson; and (4) any claim for compensation for moving contaminated soil had already been settled by the parties. Given our conclusions below, we need not address these additional defenses.

doing, the forum must start with the express language found in the contract and it is the representations found in the specifications and drawings, not the subjective intent of the drafter, that govern the contract interpretation. *Id.* When interpreting the language of a contract, the various contract provisions must be read as part of an organic whole, according reasonable meaning to all of the contract terms. *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991). Such interpretation must assure that no contract provision is made inconsistent, superfluous, or redundant. *Hughes Communications Galaxy, Inc. v. United States*, 998 F.2d 953, 958 (Fed. Cir. 1993). Moreover, the language of the contract must be given the meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances, *Teg-Paradigm Environmental, Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006), unless a special or unusual meaning of a particular term or usage was intended, and was so understood by the parties. *Lockheed Martin IR Imaging Systems, Inc. v. West*, 108 F.3d 319, 322 (Fed. Cir. 1997).

In our view, the only reasonable reading of the solicitation and resulting contract is that vehicles intending to enter the project cite were to be subject to security inspection by the U.S. Capitol Police in a manner and at a place to be determined by that organization. Again, the Special Security Requirements clause in the RFP provided that "[a]ll vehicles . . . used by the Contractor or his subcontractors, which enter or leave United States Government property during performance of the work, will be subject to clearance, inspection and identification procedures conducted by the United States Capitol Police." R4, Tab 4, Special Security Requirements, at 62. That the place of inspection might be other than the project site was suggested by the fact that this clause further indicated that "Instructions and map(s) will be provided to the contractor upon award." *Id.* We agree with AOC that there would appear to be little need to furnish maps if the vehicle security inspections were to occur at the project site. AOC Reply, February 26, 2007, at 5, 8.

Likewise, the fact that the Site Security clause in the RFP initially expressly provided that "[t]he Police inspection station is on P Street and South Capitol Street SE," that is, at some distance from the project site, indicated that the security inspection could occur at other than the project site. R4, Tab 4, Site Security, at 63. While Amendment No. 3 to the RFP deleted the express provision for off-site inspection, the fact that the amendment did not replace this language with an express provision for on-site inspection, but instead directed the contractor to "[c]oordinate deliveries with the U.S. Capitol Police by

contacting them at 202-224-0908," *id.*, was a further indication that the location of the inspection station would be determined by the U.S. Capitol Police and could be at other than the project site. Further, in this case, the U.S. Capitol Police designated an inspection point that was only approximately 6-7 blocks from the entrance to the West Refrigeration Plant Expansion on Virginia Avenue, which was within a reasonable range of the project site.

In any case, Hitt has pointed to nothing in the solicitation and resulting contract that provided for the vehicle security inspection to occur at the project site. Hitt notes that the Site Use by Contractor and Site Access clause in the RFP indicated that "[s]ite access for the Contractor shall primarily occur" through guarded gates on Virginia Avenue (with limited use of the service entrance from E Street). R4, Tab 4, Site Use by Contractor and Site Access, at 64, Hitt Opposition to AOC Motion, February 9, 2007, at 7. However, as indicated by the above Special Security Requirements and Site Security clauses, the solicitation distinguished the process for vehicle inspections from access to the project site through guarded gates on Virginia Avenue. Thus, the fact that the solicitation specified where the access gates for the project were located did not also thereby indicate where the vehicle security inspections would occur.[2]

---

[2] Indeed, we note that Anderson's project manager for the West Refrigeration Plant Expansion Project, when deposed by AOC, conceded that the contract did not "specifically indicate" that the truck inspections were to occur on the project site. AOC Motion, Tab A, Deposition of Anderson Project Manager for West Refrigeration Plant Expansion Project, at 12, 128. Likewise, Hitt's project manager, when deposed by AOC, testified that he viewed the contract provisions regarding where the truck inspections were to occur as "ambiguous." AOC Reply, February 26, 2007, Tab B, Deposition of Hitt Project Manager, at 156-57. As indicated above, we find that the solicitation and resulting contract instead clearly indicated that the vehicle security inspections would occur at a place to be determined by the U.S. Capitol Police. Nevertheless, to the extent that the solicitation may be viewed as ambiguous in this regard, we note that Hitt was required under the "Interpretations" clause of the RFP to "request the Contracting Officer, in writing, for an interpretation or correction of any ambiguity . . . ." R4, Tab 4, Interpretations, at 61. Hitt could not simply assume, as it apparently did, that the vehicle security inspections were to occur only at the project site.

In sum, when read as a whole, the solicitation and resulting contract did not afford Hitt any basis for assuming that the vehicle security inspections provided for under the solicitation and resulting contract would only occur at the project site. Rather, the solicitation instead clearly indicated that the vehicle security inspections would occur at a place to be determined by the U.S. Capitol Police. In these circumstances, where Hitt was required to assume in pricing its offer that the vehicle security inspections could occur off-site, there is no basis for finding that AOC changed the contract so as to entitle Hitt to an equitable adjustment. Therefore, we grant AOC's motion for summary judgment.

The appeal is denied.

Dated: May 30, 2007

David A. Ashen
Presiding Member
Contract Appeals Board
Government Accountability Office

Frank Maguire
Contract Appeals Board
Government Accountability Office