NO. 07-823C
(Chief Judge Damich)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

HITT CONTRACTING, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARK A. MELNICK
Assistant Director

SEAN B. McNAMARA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 305-7573
Fax: (202) 514-8624

OF COUNSEL:
Peter M. Kushner
William Dolan
Office of the Architect
of the Capitol

April 29, 2008

Attorneys for Defendant

**TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . ii

DEFENDANT'S BRIEF . . . . . . . . . . 1

ISSUE PRESENTED . . . . . . . . . . 1

STATEMENT OF THE CASE AND OF THE FACTS . . . . . . . . . . 2

I. Introduction . . . . . . . . . . 2

II. Award And Performance Of The Contract . . . . . . . . . . 2

III. Hitt's Claim . . . . . . . . . . 3

IV. Relevant Contract Provisions . . . . . . . . . . 3

V. The Board's Decision . . . . . . . . . . 4

SUMMARY OF THE ARGUMENT . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . 6

I. Standard Of Review . . . . . . . . . . 6

II. Contract Interpretation Standards . . . . . . . . . . 7

III. The Plain Language Of Hitt's Contract Supports The Board's Decision . . . . . . . 8

IV. Hitt's Reading Of The Contract Is Unreasonable . . . . . . . . . . 9

V. Hitt Cannot Recover For Its Mistaken Assumption About Inspections . . . . . . . 11

VI. Hitt Cannot Recover Now For Any Ambiguity In The Contract . . . . . . . . . . 13

VII. Any Remaining Issues Require Findings Of Fact . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . 17

# TABLE OF AUTHORITIES

## CASES

Atlas Corp. v. United States,
895 F.2d 745 (Fed. Cir. 1990) . . . . . 12

Beacon Const. Co. of Mass. v. United States,
314 F.2d 501 (Ct. Cl. 1963) . . . . . 8, 13

Blue & Gold Fleet, L.P. v. United States,
492 F.3d 1308 (Fed. Cir. 2007) . . . . . 13

Coast Fed. Bank, FSB v. United States,
323 F.3d 1035 (Fed. Cir. 2003) . . . . . 7

Dairyland Power Co-op. v. United States,
16 F.3d 1197 (Fed. Cir. 1994) . . . . . 12, 13

Dakota Tribal Indus. v. United States,
34 Fed. Cl. 593 (1995) . . . . . 12

Dana Corp. v. United States,
470 F.2d 1032 (Ct. Cl. 1972) . . . . . 8

E.R. Mitchell Const. Co. v. Danzig,
175 F.3d 1369 (Fed. Cir. 1999) . . . . . 16

Fry Communications, Inc. v. United States,
22 Cl. Ct. 497 (1991) . . . . . 7

Gardiner, Kamya & Associates, P.C. v. Jackson,
467 F.3d 1348 (Fed. Cir. 2006) . . . . . 7

Granite Const. Co. v. United States,
962 F.2d 998 (Fed. Cir. 1992) . . . . . 7

Liebherr Crane Corp. v. United States,
810 F.2d 1153 (Fed. Cir. 1987) . . . . . 12, 13

McAbee Const. Inc. v. United States,
97 F.3d 1431 (Fed. Cir. 1996) . . . . . 7, 9

Metric Constructors, Inc. v. National Aeronautics and Space Admin.,
169 F.3d 747 (Fed. Cir. 1999) . . . . . 8, 13

NVT Technologies v. United States,
370 F.3d 1153 (Fed. Cir. 2004) . . . . . 8

National Australia Bank v. United States,
452 F.3d 1321 (Fed. Cir. 2006) . . . . . 12

Regan Const. Co., Inc. v. United States,
231 Ct. Cl. 937 (1982) . . . . . 7

Teg-Paradigm Environmental, Inc. v. United States,
465 F.3d 1329 (Fed. Cir. 2006) . . . . . 14

Triax Pacific, Inc. v. West,
130 F.3d 1469 (Fed. Cir. 1997) . . . . . 8, 13

White v. Edsall Const. Co., Inc.,
296 F.3d 1081 (Fed. Cir. 2002) . . . . . 7

## STATUTES

**United States Codes**

2 U.S.C. § 60-1 . . . . . 7

2 U.S.C. § 60l(b)(4) . . . . . 7

2 U.S.C. § 1801 et seq . . . . . 7

41 U.S.C. § 321 . . . . . 7

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HITT CONTRACTING, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | 07-823 C<br>(Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC") and this Court's February 29, 2008 order, defendant, the United States, respectfully requests that the Court grant summary judgment in its favor. Plaintiff has already taken its case to a board of contracts appeals and lost. Plaintiff asks this Court, pursuant to the standards of the Wunderlich Act, to overturn the board's decision. That decision was based upon a correct interpretation of plaintiff's contract. Accordingly, this Court should grant summary judgment in the Government's favor. In support of this motion, we rely upon the board's decision, the following brief, our separately filed proposed findings of uncontroverted fact, and the appendix filed with this brief.

**DEFENDANT'S BRIEF**

**ISSUE PRESENTED**

Whether plaintiff's contract required the United States Capitol Police to inspect plaintiff's dump trucks at the contract's project site where the language of the contract plainly did not identify a specific site for inspections.

## STATEMENT OF THE CASE AND OF THE FACTS

### I. Introduction

Plaintiff, Hitt Contracting, Inc. ("Hitt"), moves for partial summary judgment in this Court following a final decision of the Government Accountability Office Contract Appeals Board ("board") in Hitt Contracting, Inc., CAB No. 2006-1 (HOBC). Def. App. 1.[1] Hitt filed an appeal with the board after the Architect of the Capitol ("AOC") denied Hitt's claim related to a construction project at the United States Capitol Power Plant in Washington, D.C. Def. App. 4, 62-70. Hitt sought more money from AOC after the Capitol Police required that trucks hauling soil from the project site be inspected at an off-site location, a requirement that Hitt claimed increased the costs of one of its subcontractors. Def. App. 1, 114-127. The board issued summary judgment in AOC's favor. Def. App. 8.

### II. Award And Performance Of The Contract

This case arises out of a contract to expand the West Refrigeration Plant on the grounds of the United States Capitol. AOC awarded the contract to Hitt, which in turn awarded a subcontract for site work to Anderson. Def. App. 3, 14, 63-64. Anderson's contract required it to remove soil from the site, among other tasks. Def. App. 3, 51-54. To remove soil, Anderson hired dump truck drivers. Def. App. 3, 329. For the first few weeks of the project, when these drivers arrived at the project site, their trucks would be inspected for security purposes at the project entrance using dogs and mirrors. Def. App. 3, 330. The Capitol Police then moved the truck inspection site to the inspection station for the United States Capitol Visitor Center building project, at 3rd Street and Constitution Avenue, NW, approximately 6-7 blocks from the

---

[1] "Def. App. ___" refers to defendant's appendix. The appendix contains all documents filed with the board, with the exception of the contract, of which only relevant excerpts are provided.

entrance of the refrigeration plant project site. Def. App. 3, 4, 65, 67, 330. The police inspected the trucks and gave the drivers placards showing the time of inspection; the drivers then had 15 minutes to drive to the project, or they would be turned back at the project gate. Def. App. 4, 330.

## III. Hitt's Claim

Anderson viewed the relocation of the inspection site by the Capitol Police as a change to the contract, and it informed Hitt of its view. Def. App. 4, 121. Anderson alleged that the change added a minimum of 30 minutes to each truck's delivery time. Def. App. 4, 121. After Anderson formally requested a change to its contract with Hitt, Hitt asked AOC for an equitable adjustment, eventually filing a claim with the contracting officer. Def. App. 4, 114. The contracting officer denied the claim, for a variety of reasons, including the contract's plain language and Hitt's failure to identify any ambiguities in the contract prior to award. Def. App. 7, 67-70. Hitt appealed the contracting officer's denial to the board. Def. App. 1.

## IV. Relevant Contract Provisions

The contract contains various clauses relevant to Hitt's claim. The first of these, Section 3.5, provides:

> All vehicles, and contents, used by the Contractor or his subcontractors, which enter or leave United States Government property during performance of the work, will be subject to clearance, inspection and identification procedures conducted by the United States Capitol Police. Instructions and map(s) will be provided to the contractor upon award.

Def. App. 73.

Prior to award, Section 1.6 of the contract initially provided:

> A. Use of the site: During the construction period, the Contractor shall have use of the premises for construction activities as described below and elsewhere in the specifications.

> 1. . . .
>
> 2. Clearance: Special arrangements for all deliveries shall be arranged a minimum of 48 hours in advance of arrival to permit inspection by the United States Capitol Police. The Police inspection station is on P Street and South Capitol Street SE.

Def. App. 74. This section was amended in part, before award, to read:

> ~~The Police inspection station is on P Street and South Capitol Street SE.~~ **Coordinate deliveries with the US Capital [sic] Police by contacting them at 202-224-0908.**

Id. (strikethrough and emphasis in original).

The contract also contains a more general clause governing site access, Section 1.4, which provides:

> B. Site access for the Contractor shall primarily occur from Virginia Avenue with limited use of the service entrance from E Street. All access shall be through guarded gates and allowed only to secure personnel.

Def. App. 75.

Finally, the contract also contains an "Interpretations" clause, Section 4.1, which reads:

> Prospective offerors shall request the Contracting Officer, in writing, for an interpretation or correction of any ambiguity, inconsistency, or error in the contract documents which they may discover or which should have been discovered by a reasonably prudent offeror.

Def. App. 72.

## V. The Board's Decision

The board agreed with AOC's interpretation of the contract, holding that the only reasonable reading of the contract was that the Capitol Police could set the location for inspections at their discretion, not that inspections would necessarily occur at the project site. Def. App. 6. The board based its holding upon the contract's broad requirement that "[a]ll

vehicles . . . used by the Contractor or his subcontractors . . . will be subject to clearance, inspection and identification procedures conducted by the United States Capitol Police," with no definite location identified for inspections. Def. App. 2, 73. The board also relied upon the contract's provision that "[i]nstructions and map(s) will be provided to the contractor upon award," noting that this term would not have been needed were inspections to take place at the project site. Def. App. 2, 73.

The board further relied upon a clause in the initial solicitation that identified a specific, separate location at "P Street and Capitol South Street SE" for truck inspections. Def. App. 6, 74. This sentence was struck from the final contract, and it was replaced with a general direction to the contractor to "[c]oordinate deliveries with the U.S. Capital [sic] Police by contacting them at 202-224-0908." Def. App. 3, 74. The board found that this requirement "was a further indication that the location of the inspection station would be determined by the U.S. Capitol Police and could be at other than the project site." Def. App. 6. As the board noted, the Capitol Police designated an inspection point "that was only approximately 6-7 blocks from the entrance" to the project, which the board found to be "within a reasonable range of the project site." Def. App. 7.

Finally, the board observed that Hitt "has pointed to nothing in the solicitation and resulting contract that provided for the vehicle security inspection to occur at the project site." Def. App. 7. The board considered Hitt's argument concerning a clause in the contract providing for site access but found that the site access clause was distinct from the contract's terms covering vehicle inspections. Id. The board noted that the project managers for both Hitt and Anderson testified in depositions that they thought the contract either did not indicate where the inspections should occur or that the contract was ambiguous. Def. App. 7, 245, 324-25. If the

contract was ambiguous, the board held, then Hitt was required by the contract to request that the contracting officer interpret or correct the ambiguity. Def. App. 7. Hitt made no such request. Def. App. 3, 236-37, 324-25.

The board granted summary judgment in AOC's favor, without addressing AOC's other defenses, which included defenses based upon (1) the "sovereign acts" doctrine, (2) the contract's "no damages for delay" clause, (3) the "Severin Doctrine," and (4) a prior settlement. Def. App. 5. Hitt then filed its complaint in this Court.

## SUMMARY OF THE ARGUMENT

The board's decision was correct, and this Court should accordingly grant summary judgment in the Government's favor. The terms of Hitt's contract are plain. The contract provided that the Capitol Police would conduct vehicle inspections, but the contract did not say where such inspections would occur. Hitt mistakenly assumed that the inspections would take place at the project site, but Hitt cannot recover now for its mistake. To the extent that Hitt's contract was ambiguous, Hitt had a duty to request clarification of any ambiguities before award. In the event the Court reverses the board's ruling, the remaining issues require factual determinations that should be made by the board, not the Court.

## ARGUMENT

### I. Standard Of Review

The Contract Disputes Act typically governs appeals from boards of contract appeals, but when a board entertains an action brought against an agency of the United States that is not a part of the executive branch — such as the Architect of the Capitol, an agency of Congress[2] —

---

[2] See, e.g., 2 U.S.C. § 60-1 (stating that the AOC is an "officer of the Congress"); 2 U.S.C. § 60l(b)(4) (defining AOC as an instrumentality of Congress for the purposes of title VII of the Civil Rights Act of 1964 ); 2 U.S.C. § 1801 et seq. (statutes governing AOC operations).

the board's decision may be reviewed in this Court pursuant to the Wunderlich Act. See Granite Const. Co. v. United States, 962 F.2d 998, 1001 (Fed. Cir. 1992); Fry Communications, Inc. v. United States, 22 Cl. Ct. 497, 502-03 (1991). The Wunderlich Act provides that a board's decision is "final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence." 41 U.S.C. § 321. The board's factual findings are thus given a "presumption of validity." Regan Const. Co., Inc. v. United States, 231 Ct. Cl. 937, 942 (1982). A board's conclusions of law, however, are reviewed *de novo*. Granite, 962 F.2d at 1001. Despite this lack of deference, a board's legal interpretations "are given careful consideration because of its expertise in interpreting government contracts." White v. Edsall Const. Co., Inc., 296 F.3d 1081, 1084 (Fed. Cir. 2002).

## II. Contract Interpretation Standards

Contract interpretation begins with an agreement's language. Coast Fed. Bank, FSB v. United States, 323 F.3d 1035, 1038 (Fed. Cir. 2003) (en banc). If that language is "clear and unambiguous," this Court gives a contract's terms their "plain and ordinary meaning." McAbee Const. Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996). Further, the Court interprets a contract "as a whole and in a manner which gives reasonable meaning to all its parts and avoids conflict or surplusage of its provisions." Gardiner, Kamya & Associates, P.C. v. Jackson, 467 F.3d 1348, 1353 (Fed. Cir. 2006) (internal quotations omitted).

A contract contains an ambiguity if its terms are susceptible to more than one reasonable interpretation. Metric Constructors, Inc. v. National Aeronautics and Space Admin., 169 F.3d 747, 751 (Fed. Cir. 1999). A difference in interpretation alone does not create an ambiguity because "[a]ny group of words can be twisted by strained construction into an ambiguity, but this

should not be done." Dana Corp. v. United States, 470 F.2d 1032, 1043 (Ct. Cl. 1972). Instead, an interpretation must fall within a "zone of reasonableness." Id.; Metric, 169 F.3d at 751.

If the Court determines that an ambiguity is present in a contract, it next must determine whether that ambiguity is latent or patent. Metric, 169 F.3d at 751. An ambiguity is patent if it is "obvious, gross, or glaring, so that plaintiff contractor had a duty to inquire about it at the start." NVT Technologies v. United States, 370 F.3d 1153, 1162 (Fed. Cir. 2004) (internal quotation marks and brackets omitted). An ambiguity may arise from a term of a contract, or from "an obvious omission, inconsistency, or discrepancy of significance." See Beacon Const. Co. of Mass. v. United States, 314 F.2d 501, 504 (Ct. Cl. 1963). The patent ambiguity doctrine prevents contractors "from taking advantage of ambiguities in government contracts by adopting narrow interpretations in preparing their bids and then, after the award, seeking equitable adjustments to perform the additional work the government actually wanted." Triax Pacific, Inc. v. West, 130 F.3d 1469, 1475 (Fed. Cir. 1997).

## III. The Plain Language Of Hitt's Contract Supports The Board's Decision

As the board properly recognized, the language of Hitt's contract is plain and unambiguous. The contract states that vehicles entering Government property "will be subject to clearance, inspection and identification procedures conducted by the United States Capitol Police." Def. App. 73. The contract then specifies that "[i]nstructions and map(s) will be provided to the contractor upon award." Id. Finally, the contract instructs the contractor to "[c]oordinate deliveries with the U.S. Capitol Police by contacting them at 202-224-0908." Def. App. 74. These terms plainly establish that the Capitol Police were to conduct inspections with instructions and maps to be provided upon award. Contrary to Hitt's claim, the terms simply do not specify a location for inspections.

Hitt asserts that the "only reasonable interpretation of the specifications is that they require on-site inspection." Pl. Br. 5. This argument is entirely without support. Hitt cannot point to any contractual language that requires the Capitol Police to inspect vehicles at the project site. The contract in fact states only that deliveries should be coordinated with the Capitol Police. Hitt's interpretation is unreasonable because it contradicts this plain language. See McAbee, 97 F.3d at 1435. As the board held, a reasonable person reading this contract could conclude only that the Capitol Police retained the discretion to inspect vehicles entering the site "in a manner and at a place to be determined by that organization." Def. App. 6.

## IV. Hitt's Reading Of The Contract Is Unreasonable

Though Hitt admits it cannot identify any express provision of the contract that supports its interpretation, Hitt nonetheless argues that various contract terms implicitly affirm its reading. Hitt's arguments are without merit. Hitt first notes that the contract "provides for inspection of all vehicles 'which enter or leave United States Government property during performance of the work.'" Pl. Br. 5; Def. App. 73. Hitt then notes that the contract's site access provision states that the contractor would have access to the project through guarded gates at Virginia Avenue and E Street. Pl. Br. 5; Def. App. 64. Hitt admits that these provisions "do not explicitly say that inspections will take place on site" but asserts that "no reasonable person would interpret them to mean anything else." Pl. Br. 5.

The board held the opposite, and correctly so. The board noted that the contract's site access and vehicle inspection provisions are distinct, and that the existence of the site access clause does not mean that trucks would necessarily be inspected on site. Def. App. 7. This reading of the contract is sound. No reasonable contractor could read the disparate clauses upon which Hitt relies and conclude that inspections could take place only at the project site. Indeed,

as the board noted, even Hitt and Anderson's own employees thought the contract was ambiguous in this regard. Def. App. 7, 245, 324-25. Hitt's contrary position now, during litigation, is untenable.

Hitt's second assertion, that its reading would not render meaningless the contract's provision concerning instructions and maps, is no more persuasive. Pl. Br. 6. Hitt misses a fundamental point — the contract's provision about instructions and maps is broad and general; no contractor could reasonably infer anything about the content of those documents from such a general term. Further, the board's reasoning is also valid. AOC would simply not need to provide a map concerning vehicle inspections if those inspections were to take place at the job site, which had only two entrances, given that Hitt obviously knew where the project site was located. See Def. App. 6.

Hitt next argues that the contract's direction that it "coordinate" its deliveries with the Capitol Police supports its reading. Pl. Br. 6-7. Hitt asserts that Anderson "never had to coordinate deliveries with the Capitol Police" because the inspection station "was open during defined hours, and Anderson's trucks simply had to report for inspection." Pl. Br. 6. This may be generally true, but Anderson certainly had to coordinate with the Capitol Police when the police moved the inspection location off-site for the first time. Moreover, Hitt does not explain how it would have to coordinate on-site inspections any more than it would have to coordinate off-site inspections.

Finally, Hitt argues that the contract contained "no direction to contact the Capitol Police to find out where inspections would be." Pl. Br. 7. Again, Hitt misses the point. The contract did not expressly direct bidders to contact the Capitol Police before award, but it obviously contemplated that inspections could occur a reasonable distance from the project site. Hitt

simply failed to account for this possibility in its bid. This does not mean that Hitt can now complain that the contract required on-site inspections.

## V. Hitt Cannot Recover For Its Mistaken Assumption About Inspections

At root, Hitt's claim is not, in fact, based upon an interpretation of its contract, given that the contract's language plainly forecloses the remedy Hitt seeks. Hitt's claim is instead founded upon an assumption that Hitt and Anderson made concerning the Capitol Police's inspection procedures. As Anderson's project manager admitted in his deposition, and as Anderson stated in its claim to the contracting officer, Hitt and Anderson assumed that the Capitol Police would conduct inspections at the project site. Def. App. 3, 7, 8, 99, 245. This assumption was reasonable, Hitt now asserts, because inspecting trucks elsewhere meant that a "driver with one accomplice could easily pick up explosives, weapons, or just about anything else on the way from the inspection station to the project site." Pl. Br. 5-6.[3]

Hitt and Anderson's assumption was wrong. The Capitol Police decided to inspect trucks off site. The trouble for Hitt is that it cannot recover for its incorrect assumption, even if that assumption was reasonable, in light of the contract's plain language. Because Hitt's interpretation would excise that language from the contract, Hitt's interpretation would require the reformation of the contract, an "extraordinary remedy" available only upon presentation of satisfactory proof of four elements: "(1) the parties to the contract were mistaken in their belief regarding a fact; (2) that mistaken belief constituted a basic assumption underlying the contract; (3) the mistake had a material effect on the bargain; and (4) the contract did not put the risk of

[3] Hitt's criticism of the Capitol Police's inspection procedures has no support in the record. The board made no findings concerning the effectiveness of those procedures, and this Court should give no credence to Hitt's uninformed evaluation of the professional judgment of the police.

the mistake on the party seeking reformation." National Australia Bank v. United States, 452 F.3d 1321, 1329 (Fed. Cir. 2006). The party seeking reformation must prove these elements by clear and convincing evidence. Id.

To satisfy the first element of a reformation claim, a plaintiff must "allege that he held an erroneous belief as to an existing fact." Atlas Corp. v. United States, 895 F.2d 745, 750 (Fed. Cir. 1990). If the existence of a fact "is not known to the contracting parties, they cannot have a belief concerning that fact; therefore, there can be no 'mistake.'" Id. Accordingly, "'[a] party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake' as that word is defined [under the doctrine of mutual mistake of fact].'" Dairyland Power Co-op. v. United States, 16 F.3d 1197, 1203 (Fed. Cir. 1994) (citing Restatement (Second) of Contracts § 151 cmt. a (1981)). Further, a contractor is not entitled to reformation merely because it commits an error of business judgment. Liebherr Crane Corp. v. United States, 810 F.2d 1153, 1157 (Fed. Cir. 1987); see also Dakota Tribal Indus. v. United States, 34 Fed. Cl. 593, 596 (1995) (noting that an error in judgment occurs "where the bidder has the facts necessary to make the proper conclusion but, because of improper assumptions or faulty assessments of those facts, makes a bad business decision.").

Hitt cannot establish that it was mistaken concerning an existing fact upon which its contract was based. Hitt could not be mistaken about an existing location for the truck inspections because prior to award, by the terms of the contract, the Capitol Police had not yet determined the site for truck inspections. Hitt guessed that the inspections would take place at the project site, but it guessed wrong. This error in business judgment is not compensable. See Dairlyand, 16 F.3d at 1203; Liebherr, 810 F.2d at 1157.

## VI. Hitt Cannot Recover Now For Any Ambiguity In The Contract

As we establish above, the language of the contract unambiguously gives the Capitol Police the discretion to choose a location for truck inspections. Hitt offers no reasonable interpretation to rebut this reading, and so the contract is unambiguous. See Metric, 169 F.3d at 751. At the very most, Hitt could argue that the omission of an inspection location from the contract gave rise to an ambiguity. As the board noted, this was the view held by Hitt and Anderson's project managers. Def. App. 7, 236-37, 324-25.

We believe the contract is clear, but to the extent that the omission of specific site for truck inspections led to an ambiguity, it must be considered a patent ambiguity. This is true because the contract obviously did not specify any location for inspections, and an obvious omission results in a patent ambiguity. See Beacon, 314 F.2d at 504. Hitt cannot recover for this ambiguity because the contract contains a clause requiring Hitt to "request the Contracting Officer, in writing, for an interpretation or correction of any ambiguity." Def. App. 72. Hitt made no such request, and it should thus not now be permitted to recover based upon any ambiguity in the contract. This result is reinforced by the patent ambiguity doctrine, which imposes upon a contractor "a duty to seek clarification from the government" concerning ambiguities in a solicitation before submitting a bid. Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007) (internal quotations omitted). A contractor's "failure to do so precludes acceptance of its interpretation in a subsequent action against the government." Id.; see also Triax Pacific, 130 F.3d at 1475. Hitt thus cannot now complain about any ambiguities in its contract.

If the Court does entertain Hitt's argument concerning any ambiguity present in its contract, and if the Court finds the contract to be ambiguous, the Court may then "resort to

extrinsic evidence to resolve the ambiguity." See Teg-Paradigm Environmental, Inc. v. United States, 465 F.3d 1329, 1338 (Fed. Cir. 2006). Here, the contract initially identified a specific location for inspections, at "P Street and South Capitol Street SE." Def. App. 74. This language was struck from the contract, though it remained in the document in strike-through form, replaced with a directive to "[c]oordinate deliveries with the US Capital [sic] Police . . . ." Id. The stricken language suggests that the Capitol Police intended from the beginning to inspect trucks at a particular location different from the job site. The revised contract does away with a specific location, but the new requirement simply to "coordinate" deliveries could hardly lead a reasonable contractor to believe inspections would take place on site — the new language is far more general. The language struck from the contract confirms that the parties intended the contract's revised provisions to have their plain and ordinary meanings.

Hitt offers no sound argument to the contrary. Hitt claims that the initial inclusion in the contract of the specific location "would only bolster the conclusion that inspections would be conducted on-site by demonstrating that AOC would explicitly specify the location of inspections if they were to be at a remote site." Pl. Br. 6. This conclusion is unfounded. AOC removed the specific location from the contract and inserted a more general mandate that the contractor should "coordinate" its deliveries with the Capitol Police. AOC did not expressly require that trucks be inspected at the project site, though AOC could have done so. The only reasonable conclusion to be drawn from AOC's revision is that it did not know prior to award where inspections would be conducted.

## VII. Any Remaining Issues Require Findings Of Fact

In its motion for partial summary judgment, Hitt addresses two additional arguments raised by AOC before the board, but which the board expressly did not consider. Pl. Br. 7-9;

Def. App. 5. Both of these arguments depend upon factual findings that the board did not make. If the Court disagrees with the board's holding concerning the plain language of the contract, the Court should not undertake to decide these additional issues. Instead, the Court should remand this case to the board for further factual development.

Hitt's first argument concerns the contract's "No Damages for Delay" clause. Pl. Br. 7-8. As Hitt notes, this clause limits the Government's liability for damages resulting from "delays, interferences, disruptions, suspensions, changes in the sequence or the like." Pl. Br. 7. Hitt asserts that this clause does not apply because the "damages claimed by Hitt and Anderson do not arise from any of these causes, but rather from a change in the contract specifications." Pl. Br. 8. This argument fails for the reasons established above; the Government did not change the contract here in any fashion. Instead, the Capitol Police acted pursuant to the contract, and delays allegedly resulted. Even if the Court finds that the Government did, in fact, change the contract, the effect of that change would have been to potentially delay or disrupt performance, and the No Damages for Delay clause would then come into effect. Hitt's argument that the clause has no application here is thus misplaced.

As Hitt acknowledges, however, the No Damages for Delay clause, even if it applied, would allow Hitt to recover damages stemming from only "on-site direct costs." Pl. Br. 7-8. Hitt asserts that it seeks "only direct equipment costs," though Hitt admits that it also seeks markups on these costs. Pl. Br. 8. The board did not decide whether the costs sought by Hitt are properly classified as "direct," or whether they might more properly be classified as "Loss of Productivity" costs, to which the clause expressly applies. The board also did not decide whether Hitt's alleged costs were "on-site" direct costs, which are a specific type of costs excluded from the No Damages for Delay clause, or whether Hitt's costs were incurred off-site

while trucks were on their way to inspection. Pl. Br. 7. The proper classification of Hitt's costs presents questions of fact. Given the Court's standard of review, it cannot decide these facts in the first instance and therefore it should remand to the board for a determination — though, again, only if the Court disagrees with our argument concerning the contract's plain meaning.

The Court should likewise decline to consider the application of the Severin doctrine to this case. We essentially agree with Hitt that if Hitt is liable to Anderson for Anderson's costs, Hitt may be able to recover those costs from the Government, notwithstanding Anderson's lack of privity with the Government. Pl. Br. 9; see E.R. Mitchell Const. Co. v. Danzig, 175 F.3d 1369, 1370-71 (Fed. Cir. 1999). As with the No Damages for Delay clause issue, however, the board did not decide whether Hitt is liable to Anderson, and this Court should decline to do so now. The issue is not as simple as Hitt represents. Like Hitt's contract with AOC, Hitt's contract with Anderson also contains a No Damages for Delay clause. Def. App. 18. This clause states that:

> Under no circumstances shall Contractor be liable to Subcontractor for damages resulting from delays or acceleration of the work or loss of productivity. Contractor's liability to Subcontractor is strictly limited to allocation of damages recovered from and time extensions allowed by the Owner for the Subcontractor Scope of Work. Time extensions shall be Subcontractor's sole remedy for delays caused solely by the Contractor.

Id.

This clause mirrors the No Damages for Delay clause in Hitt's contract with AOC. Pursuant to the plain terms of the clauses, if Hitt could not recover for delays or loss of productivity from AOC, then Anderson could not recover such damages from Hitt. Application of the Severin doctrine here then is dependent upon application of the No Damages for Delay clause in Hitt's contract, and that clause presents issues of fact that this Court should not decide.

This Court should instead remand the matter to the board for a determination, if necessary.

## CONCLUSION

For the foregoing reasons, this Court should grant the Government's motion for summary judgment.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

OF COUNSEL:
Peter M. Kushner
William Dolan
Office of the Architect
of the Capitol

s/ Sean B. McNamara
SEAN B. McNAMARA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street
Washington, D.C. 20530
Tel: (202) 305-7573
Fax: (202) 514-8624

April 29, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 29th day of April, 2008, a copy of the foregoing "DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/ Sean B. McNamara