NO. 07-823C
(Chief Judge Damich)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

HITT CONTRACTING, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S APPENDIX

---

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARK A. MELNICK
Assistant Director

SEAN B. McNAMARA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 305-7573
Fax: (202) 514-8624

OF COUNSEL:
Peter M. Kushner
William Dolan
Office of the Architect
of the Capitol

April 29, 2008

Attorneys for Defendant

# Index to Appendix


| Document | Page |
|---|---|
| Board decision, dated May 30, 2007 | 1 (A) |
| Rule 4 Appeal File Index | 10 (B) |
| HITT/Anderson Company Subcontract, dated May 15, 2003 | 13 (B-2) |
| Contracting Officer's Final Decision, dated April 11, 2005 | 61 (B-3) |
| Relevant Contract Pages | 71 (B-4) |
| Preconstruction Meeting Minutes, dated April 10, 2003 | 76 (B-5) |
| HILL Memo to HITT, dated June 5, 2003 | 81 (B-6) |
| HILL Meeting Minutes, dated August 14, 2003 | 83 (B-7) |
| HITT Letter to HILL, dated September 11, 2003 | 85 (B-8) |
| HITT Transmittal to HILL, dated October 16, 2003 | 87 (B-9) |
| Architect of the Capitol Letter to HITT, dated October 19, 2003 | 96 (B-10) |
| HITT Letter to HILL, dated December 9, 2003 | 97 (B-11) |
| Architect of the Capitol Letter to HITT, dated December 21, 2003 | 101 (B-12) |
| Architect of the Capitol Letter to HITT, dated February 15, 2004 | 102 (B-13) |
| HITT Letter to Architect of the Capitol, dated April 29, 2004 | 114 (B-14) |
| Architect of the Capitol Letter to HITT, dated May 25, 2004 | 128 (B-15) |
| HITT Letter to Architect of the Capitol, dated June 10, 2004 | 132 (B-16) |
| Anderson Company Letter to HITT, dated September 1, 2004 | 133 (B-17) |

Exhibit A: Breakdown of Hauled Loads . . . . . . . . . . . . . . . . . . . . . . . . 135 (B-18)

Exhibit B: TAC Certified Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 158 (B-19)

HITT Letter to Architect of the Capitol, dated September 22, 2004 . . . 179 (B-20)

Architect of the Capitol Letter to HITT, dated September 24, 2004 . . . 182 (B-21)

HITT Letter to Architect of the Capitol, dated February 8, 2005 . . . . . 184 (B-22)

HITT Letter to Architect of the Capitol, dated March 7, 2005 . . . . . . . 204 (B-23)

Supplement to Appeal File, dated July 21, 2006 . . . . . . . . . . . . . . . . . . . . . 207 (C)

Anderson Company Letter to HITT, dated October 6, 2005 . . . . . . . . . . 210 (C-1)

Anderson Company Letter to HITT, dated May 2, 2006 . . . . . . . . . . . . 212 (C-2)

Deposition of Jason Brown, dated December 28, 2006 . . . . . . . . . . . . . 214 (D-1)

Plant Expansion Summary, dated September 30, 2002 . . . . . . . . . . . . . . 286 (D-2)

Appellant’s Answers to First Interrogations, dated December 4, 2006 . 291 (D-3)

Affidavit of Michael Mologne, dated January 16, 2007 . . . . . . . . . . . . . 312 (D-4)

Deposition of Jason Brown (81-128), dated December 28, 2006 . . . . . . 315 (E-1)

Deposition of Stephen Schoenefeldt, dated January 18, 2007 . . . . . . . . 321 (E-2)

Affidavit of Cynthia Bennett, dated February 23, 2007 . . . . . . . . . . . . . 326 (E-3)

Affidavit of Michael Mologne, dated February 22, 2007 . . . . . . . . . . . . 327 (E-4)

Affidavit of Jason Brown, dated Febrary 7, 2007 . . . . . . . . . . . . . . . . . . . 329 (F-1)

Map of U.S. Capitol . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 332 (F-2)

Amendment to Plant Expansion Summary, dated Febrary 12, 2003 . . . . 333 (F-3)

Affidavit of John Seeman, dated February 7, 2007 . . . . . . . . . . . . . . . . . . . 336 (F-4)

Modification of Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 337 (F-5)

Deposition of Stephen Schoenefeldt, dated January 18, 2007 . . . . . . . . . . 343 (F-6)

JAMES A. SPANGENBERG
Chairman

GOVERNMENT ACCOUNTABILITY OFFICE
CONTRACT APPEALS BOARD
441 G Street, NW • Rm. 7182 • Washington, DC 20548
(202) 512-3342 • cab@gao.gov

DAVID A. ASHEN
Senior Member

| | | |
|---|---|---|
| Appeal of – | ) | |
| | ) | |
| Hitt Contracting, Inc. | ) | CAB No. 2006-1 (HOBC) |
| | ) | |
| Under Contract No. AOC-0300012 | ) | |

Appearance for the Appellant

Joseph H. Kasimer, Esq.
M. Joseph Pierce, Esq.
Kasimer & Annino

Mark S. Dachille, Esq.
Huddle & Jones

Appearance for the Respondent

C. William Groscup, Esq.
Vivian Katsantonis, Esq.
Mark A. Sgarlata, Esq.
Watt, Tieder, Hoffar and Fitzgerald

**DECISION**

Hitt Contracting, Inc. appeals the decision of the Architect of the Capital (AOC) denying its claim and seeks $278,331.50 in damages arising out of asserted changes in contract No. 0300012, for expansion of the West Refrigeration Plant of the U.S. Capitol Power Plant in Washington, D.C. Hitt asserts that a requirement for an off-site security inspection of dump trucks traveling to the work site amounted to a contract change for which it was entitled to additional compensation. This Board's jurisdiction over this

appeal is pursuant to the Disputes Clause in the contract and the appointment of the Board by House Office Building Commission.

AOC moves for summary judgment. Hitt opposes the motion. We grant AOC's motion for summary judgment.

**Background**

On December 17, 2002, AOC issued request for proposals (RFP) No. AOC-030012, for expansion of the West Refrigeration Plant between Virginia Avenue and E Street, SE, Washington, D.C. Rule 4 File (R4), Tab 3, Contracting Officer's Final Decision, April 11, 2005, at 52. The RFP included several provisions regarding site security and site access. RFP § 3.5, Special Security Requirements, Supplementary Conditions, provided as follows:

> All vehicles, and contents, used by the Contractor or his subcontractors, which enter or leave United States Government property during performance of the work, will be subject to clearance, inspection and identification procedures conducted by the United States Capitol Police. Instructions and map(s) will be provided to the contractor upon award.

R4, Tab 4, Special Security Requirements, at 62. RFP § 1.6, Site Security, Specification 01100-4, as issued, provided in relevant part as follows:

> A. Use of the site: During the construction period, the Contractor shall have use of the premises for construction activities as described below and elsewhere in the specifications.
>
> > 1. . . .
> >
> > 2. Clearance: Special arrangements for all deliveries shall be arranged a minimum of 48 hours in advance of arrival to permit inspection by the United States Capitol Police. The Police inspection station is on P Street and South Capitol Street SE.

R4, Tab 4, Site Security, at 63. RFP § 1.4, Site Use by Contractor and Site Access, Specification 01110-2, provided in relevant part as follows:

> B. Site access for the Contractor shall primarily occur from Virginia Avenue with limited use of the service entrance from E Street. All access shall be through guarded gates and allowed only to secure personnel.

R4, Tab 4, Site Use by Contractor and Site Access, at 64. In addition, the RFP included the AOC clause entitled "Interpretations (AOC) (SEP 1999)," at Section 4.1, Solicitation Conditions, which provided that: "Prospective offerors shall request the Contracting Officer, in writing, for an interpretation or correction of any ambiguity, inconsistency, or error in the contract documents which they may discover or which should have been discovered by a reasonably prudent offeror." R4, Tab 4, Interpretations, at 61. Neither Hitt, Anderson, nor any other firm requested AOC to clarify the vehicle security, screening, or inspection requirements. AOC Motion for Summary Judgment at 5-6; AOC Reply, February 26, 2007, Tab B, Deposition of Hitt Project Manager, at 156-58; AOC Motion, Tab A, Deposition of Anderson Project Manager for West Refrigeration Plant Expansion Project, at 92-93; Oral Arguments, March 9, 2007, at 69-70.

On February 3, 2003, AOC issued Amendment No. 3 to the RFP. R4, Tab 1, Hitt Contract, Amend. 3. Of relevance here, that amendment revised RFP § 1.6, Site Security, Specification 01100-4, deleting the above-quoted sentence reading "The Police inspection station is on P Street and South Capitol Street SE," and replacing it with the direction to "Coordinate deliveries with the U.S. Capitol Police by contacting them at 202-224-0908." R4, Tab 4, Site Security, at 63.

On March 24, 2003, AOC awarded contract No. 0300012 for the West Refrigeration Plant Expansion to Hitt. R4, Tab 1, Hitt Contract. On May 15, 2003, Hitt awarded a subcontract to The Anderson Company, L.L.C., for excavation, sitework and building demolition. R4, Tab 2, Anderson Subcontract, Scope of Work.

Anderson commenced performance of the subcontract awarded by Hitt on or about May 22, 2003. Hitt Opposition to Summary Judgment Motion, February 9, 2007, Tab 1, Affidavit of Anderson Project Manager for West Refrigeration Plant Expansion. Anderson's contract with Hitt required it to remove large quantities of soil material from the project site. *Id.* Anderson hired dump trucks and drivers, either directly or through a trucking broker, paying hourly rates for hauling non-contaminated soil and a unit price per ton for hauling contaminated soil. *Id.* Before reporting to the project site in the morning, and before returning to pick up a new load (after disposing of the prior loads in Southern Maryland), the dump trucks were subject to a vehicle security inspection. *Id.* From May 22, 2003, until approximately June 12, 2003, vehicle security inspections under the Hitt contract occurred at the guarded security station at the entrance to the project along Virginia Avenue using dogs and mirrors. *Id.* On or about June 13, 2003, the U.S.

Capitol Police directed Anderson to send all vehicles intending to enter the project site first to the U.S. Capitol Police inspection station for the U.S. Capitol Visitor Center building project at 3rd and Constitution Avenue, NW, approximately 6-7 blocks from the entrance to the West Refrigeration Plant Expansion on Virginia Avenue. *Id.*; R4, Tab 3, Contracting Officer's Final Decision, at 54, 56. After being inspected, the trucks were provided with a placard showing the time of inspection. Hitt Opposition to Summary Judgment Motion, February 9, 2007, Tab 1, Affidavit of Anderson Project Manager for West Refrigeration Plant Expansion. Each truck had a maximum of 15 minutes within which to report to the project site; if a truck arrived at the project site more than 15 minutes after the vehicle security inspection, the truck would have to return to the inspection station. *Id.*

By letter dated June 13, 2003, Anderson notified Hitt that it considered conducting the truck inspections at a location other than the project site to be a change in the contract; according to Anderson, this change added a minimum of 30 minutes to each roundtrip. R4, Tab 8, Letter from Anderson to Hitt, at 75. By letter dated November 25, 2003, Anderson formally requested Hitt to issue a change order on account of the off-site truck inspections. R4, Tab 11, Letter from Anderson to Hitt, at 87. Hitt then requested an equitable adjustment to its contract with AOC for the additional costs associated with the off-site security inspections; upon AOC's refusal, Hitt requested a final contracting officer's decision. R4, Tabs 14, 16, 22, 23. In response, on April 11, 2005, the Contracting Officer issued a "Final Decision" in which he denied the request for additional compensation on the basis that the off-site security inspection of the dump trucks used on the project was required by the contract. R4, Tab 3, Contracting Officer's Final Decision, at 59. Hitt appealed the contracting officer's decision on May 9, 2005.

On January 18, 2007, AOC filed a motion for summary judgment pursuant to Rule 6 of the applicable Rules of the Contract Appeals Board (April 2006), contending that there are no material facts in dispute, and that it is entitled to favorable judgment as a matter of law. As relevant to this decision, AOC asserts that Hitt's contract with the agency did not require that the vehicle inspections specified in the contract take place at the project site; rather, according to the agency, the contract instead provided for the vehicle

inspections to occur at a location to be determined by the U.S. Capitol Police. AOC Motion at 10-13.[1] In its opposition to the motion, Hitt asserts that when reasonably interpreted, the contract provided for inspections to occur at the project site and not off-site. Hitt Opposition at 6-7.

**Discussion**

Summary judgment is appropriate where no material facts are genuinely in dispute and the moving party is entitled to judgment as a matter of law. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). A material fact is one that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The facts are viewed in the light most favorable to the nonmoving party and doubts are resolved against the moving party. *American Pelagic Fishing Co., LP v. United States*, 379 F.3d 1363, 1371 (Fed. Cir. 2004). However, to counter a motion for summary judgment, more than mere assertions of counsel are necessary. *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984). The nonmoving party may not rest on its conclusory pleadings, but must set out, in affidavit or otherwise, what specific evidence could be offered at trial. Failure to do so may result in the motion being granted. Conclusory assertions do not raise a genuine issue of fact. *Id.*

Contract interpretation is a question of law, *Calif. Fed. Bank, FSB v. United States*, 245 F.3d 1342, 1346 (Fed. Cir. 2001); as a question of law, contract interpretation issues are generally amenable to summary judgment. *Varilease Technology Group, Inc. v. United States*, 289 F.3d 795, 798 (Fed. Cir. 2002). In interpreting a contract, a forum's fundamental objective is to ascertain the parties' intent and effectuate the purpose of their agreement. *P.R. Burke Corp. v. United States*, 47 Fed. Cl. 340, 346 (2000). In so

---

[1] AOC has also raised several other defenses to Hitt's appeal which the agency asserts also entitle it to summary judgment, including that: (1) the vehicle inspections were a "sovereign act" by another government entity (the U.S. Capitol Police); (2) any compensation was barred by a "no damages for delay clause" in Hitt's contract with AOC; (3) Hitt's claim was barred under the "Severin Doctrine" on the basis that Hitt was not liable to Anderson; and (4) any claim for compensation for moving contaminated soil had already been settled by the parties. Given our conclusions below, we need not address these additional defenses.

doing, the forum must start with the express language found in the contract and it is the representations found in the specifications and drawings, not the subjective intent of the drafter, that govern the contract interpretation. *Id.* When interpreting the language of a contract, the various contract provisions must be read as part of an organic whole, according reasonable meaning to all of the contract terms. *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991). Such interpretation must assure that no contract provision is made inconsistent, superfluous, or redundant. *Hughes Communications Galaxy, Inc. v. United States*, 998 F.2d 953, 958 (Fed. Cir. 1993). Moreover, the language of the contract must be given the meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances, *Teg-Paradigm Environmental, Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006), unless a special or unusual meaning of a particular term or usage was intended, and was so understood by the parties. *Lockheed Martin IR Imaging Systems, Inc. v. West*, 108 F.3d 319, 322 (Fed. Cir. 1997).

In our view, the only reasonable reading of the solicitation and resulting contract is that vehicles intending to enter the project cite were to be subject to security inspection by the U.S. Capitol Police in a manner and at a place to be determined by that organization. Again, the Special Security Requirements clause in the RFP provided that "[a]ll vehicles . . . used by the Contractor or his subcontractors, which enter or leave United States Government property during performance of the work, will be subject to clearance, inspection and identification procedures conducted by the United States Capitol Police." R4, Tab 4, Special Security Requirements, at 62. That the place of inspection might be other than the project site was suggested by the fact that this clause further indicated that "Instructions and map(s) will be provided to the contractor upon award." *Id.* We agree with AOC that there would appear to be little need to furnish maps if the vehicle security inspections were to occur at the project site. AOC Reply, February 26, 2007, at 5, 8.

Likewise, the fact that the Site Security clause in the RFP initially expressly provided that "[t]he Police inspection station is on P Street and South Capitol Street SE," that is, at some distance from the project site, indicated that the security inspection could occur at other than the project site. R4, Tab 4, Site Security, at 63. While Amendment No. 3 to the RFP deleted the express provision for off-site inspection, the fact that the amendment did not replace this language with an express provision for on-site inspection, but instead directed the contractor to "[c]oordinate deliveries with the U.S. Capitol Police by

contacting them at 202-224-0908," *id.*, was a further indication that the location of the inspection station would be determined by the U.S. Capitol Police and could be at other than the project site. Further, in this case, the U.S. Capitol Police designated an inspection point that was only approximately 6-7 blocks from the entrance to the West Refrigeration Plant Expansion on Virginia Avenue, which was within a reasonable range of the project site.

In any case, Hitt has pointed to nothing in the solicitation and resulting contract that provided for the vehicle security inspection to occur at the project site. Hitt notes that the Site Use by Contractor and Site Access clause in the RFP indicated that "[s]ite access for the Contractor shall primarily occur" through guarded gates on Virginia Avenue (with limited use of the service entrance from E Street). R4, Tab 4, Site Use by Contractor and Site Access, at 64, Hitt Opposition to AOC Motion, February 9, 2007, at 7. However, as indicated by the above Special Security Requirements and Site Security clauses, the solicitation distinguished the process for vehicle inspections from access to the project site through guarded gates on Virginia Avenue. Thus, the fact that the solicitation specified where the access gates for the project were located did not also thereby indicate where the vehicle security inspections would occur.[2]

---

[2] Indeed, we note that Anderson's project manager for the West Refrigeration Plant Expansion Project, when deposed by AOC, conceded that the contract did not "specifically indicate" that the truck inspections were to occur on the project site. AOC Motion, Tab A, Deposition of Anderson Project Manager for West Refrigeration Plant Expansion Project, at 12, 128. Likewise, Hitt's project manager, when deposed by AOC, testified that he viewed the contract provisions regarding where the truck inspections were to occur as "ambiguous." AOC Reply, February 26, 2007, Tab B, Deposition of Hitt Project Manager, at 156-57. As indicated above, we find that the solicitation and resulting contract instead clearly indicated that the vehicle security inspections would occur at a place to be determined by the U.S. Capitol Police. Nevertheless, to the extent that the solicitation may be viewed as ambiguous in this regard, we note that Hitt was required under the "Interpretations" clause of the RFP to "request the Contracting Officer, in writing, for an interpretation or correction of any ambiguity . . . ." R4, Tab 4, Interpretations, at 61. Hitt could not simply assume, as it apparently did, that the vehicle security inspections were to occur only at the project site.

In sum, when read as a whole, the solicitation and resulting contract did not afford Hitt any basis for assuming that the vehicle security inspections provided for under the solicitation and resulting contract would only occur at the project site. Rather, the solicitation instead clearly indicated that the vehicle security inspections would occur at a place to be determined by the U.S. Capitol Police. In these circumstances, where Hitt was required to assume in pricing its offer that the vehicle security inspections could occur off-site, there is no basis for finding that AOC changed the contract so as to entitle Hitt to an equitable adjustment. Therefore, we grant AOC's motion for summary judgment.

The appeal is denied.

Dated: May 30, 2007

David A. Ashen
Presiding Member
Contract Appeals Board
Government Accountability Office

Frank Maguire
Contract Appeals Board
Government Accountability Office

Omyra M. Ramsingh
Contract Appeals Board
Government Accountability Office