# SUBCONTRACTOR REQUISITION FOR PAYMENT

TO: HITT CONTRACTING INC.
2704 DORR AVENUE
FAIRFAX, VIRGINIA 22031-4901
ATTN: PROJECT ACCOUNTING

FROM ______________________

*PROJECT INFORMATION:*

PROJECT NAME: ______________________ PAYMENT REQUEST DATE ______________________

ADDRESS: ______________________ PAYMENT REQUEST NUMBER: ______________________

CITY: ______________________ PERIOD FROM ______________________

HITT CO. PROJECT MGR: ______________________ TO: ______________________

HITT CO. CONTRACT NUMBER: ______________________

| HITT USE | A | B | C | D | E | F | G | H | I | |
|---|---|---|---|---|---|---|---|---|---|---|
| COST CODE | ITEM NUMBER | DESCRIPTION OF WORK | SCHEDULED VALUE | BILLED FROM PREVIOUS APPLICATION (D+E) | BILLING THIS PERIOD | MATERIALS PRESENTLY STORED (NOT D OR E) | TOTAL COMPLETED & STORED (D+E+F) | % COMPLETE (G/C) | BALANCE TO FINISH (C-G) | RETAINAGE |
| | | | | | | | | | | |
| TOTALS | | | | | | | | | | |

## BILLING RECAP

1 ORIGINAL CONTRACT AMOUNT . . . . ______________

2 APPROVED CHANGE ORDERS (C.O. detail on reverse) . . . . ______________

3 CONTRACT SUM TO DATE (Line 1 + 2) . . . . ______________

4 TOTAL COMPLETE & STORED TO DATE (Col. G total) . . . . . . . ______________

5 RETAINAGE (_____% of completed work) ______________

6 TOTAL EARNED LESS RETAINAGE (Line 4 less Line 5) . . ______________

7 LESS PREVIOUS CERTIFICATES FOR PAYMENT (Line 6 from prior request) ______________

8 CURRENT PAYMENT DUE (Line 6 less Line 7) . . . ______________

## CERTIFICATE OF THE SUBCONTRACTOR

I certify that payment less applicable retention has been made for the period covered by previous payments received from Hitt Contracting, Inc., to (1) my subcontractor(s) (sub-subcontractor(s)), (2) For all material and labor used in or in connection with the performance of this contract. We hereby waive our right to claim a mechanics lien for any work covered by prior requisitions upon which payment has been made. I further certify that I have complied with federal, state and local tax laws, including social security and unemployment compensation and workman's compensation laws insofar as applicable to the performance of this contract.

Date ______________________ Subscribed and Sworn to before me

______________________ (Subcontractor)

This _____ Day of ______________, 19 _____

By: ______________________

Notary: ______________________

Title: ______________________

My commission expires: ______________________

49

THIS REQUISITION WILL BE REJECTED AND RETURNED IF ANY AREAS ARE LEFT INCOMPLETE

# CONTRACTING OFFICER'S FINAL DECISION

THE ARCHITECT OF THE CAPITOL
1793

Washington, DC 20515
April 11, 2005

CERTIFIED MAIL-RETURN RECEIPT REQUESTED
AND FACSIMILE

HITT Contracting, Inc. ("HITT")
2704 Dorr Avenue
Fairfax, VA 22031

ATTN: Mr. Jerry Brandmueller
Senior Project Manager

CONTRACT: West Refrigeration Plant Expansion
AOC Contract No. 0300012

SUBJECT: Request for Equitable Adjustment;
Off-Site Security Inspection Claim;
Contracting Officer's Final Decision

Gentlemen:

I have reference to HITT's request for a Contracting Officer's Final Decision in its letter dated February 8, 2005, as amended by its letters to this Agency dated February 16, 2005, and March 7, 2005. In reviewing this claim, I am also taking into account the assertions and proofs in HITT's related letters to this Agency dated December 9, 2003, April 29, 2004, and September 22, 2004, including all exhibits and attachments that were enclosed (collectively, the "Claim").

HITT's claim requests $243,256.50 (covering only the period ending December 31, 2004) as additional compensation for its dump trucks having to go through a Capitol Police checkpoint at the intersection of Third Street and Pennsylvania Avenue, N.W., about 6 - 7 city blocks from the job site at South Capitol and E Streets, S.E. In essence, HITT claims that the government requirement that the dump trucks go through a security checkpoint is a change-order, which HITT did not include in its pre-contract price offer, and for which HITT deserves additional compensation from the government.

Based on the facts and analyses herein below, HITT's Claim is hereby denied in its entirety.

## I. FINDINGS OF FACT - BACKGROUND INFORMATION

The subject contract between HITT and the Architect of the Capitol (the "Contract") has an approximate value of $70 million. Such contract is for the expansion of the U. S. Capitol West Refrigeration Plant. To fulfill its excavation duties, HITT entered into a subcontract with The Anderson Company, L.L.C. ("Anderson") with an approximate value of $2 million. The subcontract provides for Anderson to remove soil via dump trucks from the construction site. To complete its own duties, Anderson apparently subcontracted further with several dump-truck companies at hourly rate, varying by truck company. Anderson has sought the same $243,256.50 from HITT that HITT seeks from the Government in the instant Claim.

HITT had a recent prior contract with AOC for the AOC's Interim Coal Handling Facility, so HITT had actual knowledge and familiarity with AOC's offsite vehicle inspection requirements. Thus, at the time that HITT agreed to the subject contract with AOC, HITT knew the location of the dump-truck Capitol Police inspection checkpoint, as well as the process and the timing ("delay") of such security inspections.

### 1. Timeline Excerpts

#### *A. Pre-Bid & Award*

December 17, 2002: The Architect of the Capitol ("AOC") advertised the West Refrigeration Plant Expansion project in accordance with RFP No. 030012. As part of the advertisement process, the AOC provided prospective offerors with the project plans and specifications, the Schedule, the Contract General Conditions, Supplemental Conditions and Solicitation Conditions. These contract documents later became part of the Contract.

December 20, 2002: The AOC held a pre-proposal conference and briefed prospective offerors on the Solicitation Conditions. As part of the briefing on the Solicitation Conditions, the AOC urged prospective offerors to write the Contracting Officer about any questions arising from the contract documents prior to the proposal deadline of March 7, 2003.

December 17, 2002 - March 7, 2003: During this solicitation period, the AOC received 500 pre-bid questions, but not one pertained to the AOC security screening clearance procedures. AOC's answers to the 500 pre-bid questions are documented in Bid Amendments 1-5.

March 24, 2003: The AOC awarded the West Refrigeration Plant Expansion contract to HITT and issued a Notice to Proceed on April 9, 2003.

B. *Post Award*

April 10, 2003: The AOC held a pre-construction meeting and briefed HITT on the AOC general security requirements. There were no inquiries from HITT pertaining to the offsite vehicle-inspection process.

May 15, 2003: Date of HITT's subcontract with Anderson. In this subcontract, Anderson agreed that it was familiar with the HITT-AOC contract, and agreed to be bound by the HITT-AOC contract terms to the same extent as HITT [Anderson subcontract (attached to HITT's April 24, 2004 correspondence), p. 2, recital D; p. 2, par. 1.C.].

June 5, 2003: The AOC issued the Delivery Vehicle Information form for Capitol Police vehicle screening.

September 11, 2003: Letter from HITT to Hill International (consultant to AOC) stating that HITT's subcontractor, Anderson, had issued a claim against HITT for time and money, arising out of the means (travel delays) by which the incoming dump trucks were being inspected at the Capitol Police offsite inspection station.

December 9, 2003: HITT's letter to Hill International, attaching Anderson's formal request for an equitable adjustment from the Government for the incremental cost of the offsite-security truck inspections. The "claim" excludes any cost and/or time analysis performed by HITT.

December 21, 2003: AOC letter to HITT, advising HITT that AOC has no contractual relationship with Anderson, and therefore, cannot address or respond to issues brought forth directly by Anderson.

April 29, 2004: HITT letter to AOC requesting a contracting officer's final decision, but expressing uncertainty about the quantum of its "claim."

May 25, 2004: AOC letter to HITT identifying factual inadequacies on the face of HITT's April 29, "claim," and giving HITT the opportunity either to supplement its "claim" with additional factual information, or else to request a Final Decision based on the then-existing (incomplete) "claim."

September 22, 2004: HITT's letter to AOC, adopting a detailed "claim" attachment from Anderson. [This is noteworthy for containing an attachment with information from Anderson on why its claim should be paid.]

September 24, 2004: AOC's letter to HITT, requesting again certain records previously requested on May 25, 2004, but still not provided by HITT to AOC.

February 8, 2005: HITT's letter to AOC, attaching documents purporting to be Anderson's purchase orders issued to dump-truck companies. The documents included only an hourly rate from each truck-provider and do not include the number of hours, or the number of loads, or the delay by load. HITT requested a Contracting Officer's Final Decision.

February 16, 2005: HITT's letter to AOC, asserting that its Claim for the period ending on December 31, 2004, aggregates to $243,256.50.

March 7, 2005: HITT's letter to AOC, asserting the aggregate number of dump-truck arrivals affected, by month, asserting that each dump truck was delayed by 30 minutes, and multiplying that by the respective dump-truck cost per hour.

2. *Relevant Factual Information Not Found in "Claim"*

A. No load-by-load travel-time-delay logs

Despite requests for the same, the Claimant did not provide in its Claim a detailed log of how much (in minutes) each of the 1,500+ truckloads were delayed. Neither does the Claim state when each dump truck actually arrived at the Capitol Police truck-inspection gate, nor when each dump truck left the truck-inspection gate, nor when each dump truck arrived at the construction site (6 - 7 blocks away). Traffic during rush hours would seem to make the delay longer than traffic at quiet times, but there is no time-of-day travel-delay analysis in the Claim.

B. No accounting for the possible time savings

There is no accounting in the Claim for any travel-time savings, if any, achieved by having the truck-inspection checkpoint where it was (further northwest), rather than being immediately at the construction site. Even though there were dump trucks arriving from many companies from various directions, time-savings do not appear to have been analyzed in the Claim.

C. No measurement-based evidence of basis for the "30-minute delay" assertion

The sole basis for the assertion that the average dump truck was delayed by at least 30 minutes seems to be the certification by an Anderson executive in his letter dated November 25, 2003. [Found under HITT's letter to AOC dated September 22, 2004, which includes

Anderson's letter of September 1, 2004, which further includes the certified letter within its Exhibit B.] The certifier does not state the basis for his estimate of 30 minutes of delay per dump truck, and he does not assert that he made personal observations of the alleged delays.

D. No record of actual payments by HITT to Anderson for Anderson's alleged truck-inspection delays

For reasons detailed below ("Severin Doctrine"), AOC does not necessarily owe HITT for increases in Anderson's cost if such cost increases will never be passed through to HITT. Like the HITT contract with AOC, the Anderson contract with HITT has a "no damage for delay" clause that limits the remedies of Anderson. In other words, one would expect to find proof in the Claim that HITT has paid or will pay Anderson, if HITT indeed deserves to collect the same money from AOC. No such evidence of payment is in the Claim.

3. *Applicable Contractual Provisions From HITT-AOC Contract*

A. Solicitation Conditions, page 4, paragraph 4, entitled "INTERPRETATIONS"

*Prospective offerors shall request the Contracting Officer, in writing, for an interpretation or correction of any ambiguity, inconsistency, or error in the contract documents which they may discover or which should have been discovered by a reasonably prudent offeror. . . . Requests for oral interpretations or any other interpretations not made by amendments will not be accepted, and any information that may possibly be gained by offerors in that manner is gratuitous and not binding.*

B. Supplementary Conditions, section 00800, paragraph 3.5, entitled "SPECIAL SECURITY REQUIREMENTS"

*All vehicles, and contents, used by the Contractor or his subcontractors, which enter or leave United States Government property during performance of the work, will be subject to clearance, inspection and identification procedures conducted by the United States Capitol Police. Instructions and map(s) will be provided to the contractor upon award.*

C. Specification 01100-4, paragraph 1.6, entitled "SITE SECURITY"

*A. (1) All personnel entering the Capitol Power Plant grounds will be required to check in at a security gate. (2) Special arrangements for all deliveries shall be arranged a minimum of 48 hours in advance of arrival to permit inspection by the*

*United States Capitol Police. Coordinate deliveries with the United States Capitol Police by contacting them at 202-224-0908.*

D. Specification 01110-2, paragraph 1.4, entitled "SITE USE BY CONTRACTOR AND SITE ACCESS"

*A. The construction drawings indicate space available for Contractor use.*
*B. Site access for the Contractor shall primarily occur from Virginia Avenue with limited use of the service entrance from E Street. All access shall be through guarded gates and allowed only to secure personnel.*

## II. ANALYSIS OF CLAIM

The Claim is essentially a government-delay claim to pay HITT (and Anderson) its costs of driving the dump trucks to the dump-truck inspection site (6 - 7 blocks from the construction site) before driving to the construction site. The Claim requests money for only the dump truck travel time between the inspection site and the construction site, but not for the time that each dump truck was going through inspection. [This is because the dump truck would have had to endure an inspection, whether the inspection site was a few blocks away or whether the inspection site was at the construction site gate.]

Because it does not take 30 minutes on average to drive a truck 6 - 7 blocks from the inspection site to the construction site, there is a lingering question in this case whether the Claim is truly motivated by recovering the time-costs of the truck-inspection itself, including waiting in line, rather than the time-costs of traveling from the inspection site to the construction site. [The truck-inspection itself, without travel time, but including waiting time, can require (on the order of magnitude of) 30 minutes per truck visit.]

The primary analytical bases for this Final Decision are as follows:

1. The Contract wording does not state that dump-truck inspection will be at the construction-site gate, and, in fact, suggests that there will be a separate location for the dump-truck inspection.

If the truck inspections were at the construction-site gate, then there would be no need for "instructions and map(s)" to be provided to the contractor. Contract, Supplementary Conditions, Section 3.5. The fact that there may be entry gates and Police inspecting government vehicles at the construction site does not mean that non-governmental dump trucks can use such gates without first having gone through the offsite (but nearby) vehicle inspection facility.

2. HITT, via its current experience in performing AOC's Interim Coal Handling Project (at the same approximate location as the instant Contract), and via its familiarity with the sole Capitol Police dump truck inspection location and procedures, should be barred (i) from arguing that HITT was unaware of delays associated with truck inspections and (ii) from arguing that HITT did not price such delays into its pre-award price bid.

There is no question that HITT had another major prior contract for work at the Capitol Power Plant location, so it is difficult to conclude that HITT was unable to price the travel time and the security delays into its bid for the instant Contract. At the time it bid, HITT had actual knowledge of the Capitol Police dump truck inspection procedures and location.

3. The "no damages for delay clause" in this Contract is enforceable here and serves to bar HITT's monetary Claim against AOC.

There is a "no damages for delay clause" in the Contract, General Conditions, Article 14. Generally, "no damages for delay" clauses provide that if the contractor (here, HITT/Anderson) is delayed in the performance of the work by an act of the owner (here, AOC), then the contractor is entitled to an extension of time for performance of the contract, but not to recover damages for government delay. James Acret, Construction Litigation Handbook, § 7:8 (2d ed. 2003).

"No damage for delay" clauses have been enforced in circumstances similar to those here: Allen-Howe Specialties Corp. v. U.S. Const., Inc., 611 P.2d 705 (Utah 1980)(subcontractor claim on building project made inefficient because of jobsite congestion); Frank T. Hickey, Inc. v. Los Angeles Jewish Community Council, 276 P.2d 52 (2d Dist. 1954) (claim for delay and extra work caused by hauling excavated material to a more distant disposal site).

4. The "no damages for delay clause" in the HITT-Anderson contract will prevent Anderson from recovering from HITT for delay, absent active interference of AOC against Anderson.

The HITT-Anderson contract also contains a "no damages for delay clause:"

> *Under no circumstances shall Contractor [HITT] be liable to Subcontractor for damages resulting from delays or acceleration of the work or loss of productivity. Contractor's liability to Subcontractor is strictly limited to allocation of damages recovered from and time extensions allowed by the Owner for the Subcontractor Scope of Work. Time extensions shall be Subcontractor's sole remedy for delays caused solely by the Contractor.* (p. 5, Article 6.E.)(emphasis added)

Thus, if Anderson is barred from winning a monetary delay claim against HITT, then Anderson is also barred from passing through a monetary delay claim to AOC. HITT's Claim contains no allegation that AOC actively interfered with Anderson's work.

5. The Claim's lack of documentation (supporting each alleged dump truck inspection travel delay) indicates in favor of denying the subject Claim.

Claimant does not tell us when each delay started and when each delay stopped, so the methodology of calculating travel delay is suspect. Claimant seems not to have measured any of these alleged travel delays. The estimate of the delays seems to be derived from a mental hypothesis by an Anderson executive who was not physically present to observe any such delay. In other words, the burden of proof has not been met for paying such a claim. We cannot determine the soundness of the Claim's damage numbers because they consist of either armchair estimates or of recollections which are not based on contemporaneous records.

6. The "Severin Doctrine" (of law) applies and bars Anderson's Claim Via HITT.

The Severin Doctrine permits the pass-through of claims from subcontractor to the Government only when actual damages have been sustained by the contractor. Severin v. United States, 99 Ct. Cl. 435 (1943). If actual damages to the prime contractor (here, HITT) have been shown, then the prime contractor may assert a claim against the government and prevail. In the instant case, since the HITT-Anderson subcontract has a "no damage for delay clause," HITT may never have to pay Anderson for delay. Indeed, according to the HITT-Anderson subcontract, HITT is liable to Anderson for damages or delays only to the extent the damages are accepted or allowed by the "owner" (here, AOC). Subcontract, p. 5, Article 6.D. and 6.E. Since HITT has not retained liability to pay Anderson in the future, HITT may not prevail against AOC in HITT's pass-through Claim. James Reeves Contractor, Inc. v. United States, 31 Fed. Cl. 712, 714-15 (1994).

7. The failure of HITT to raise the subject travel-delay issue during the pre-award interpretation period indicates against sustaining the instant Claim.

For reasons already mentioned, HITT was well aware of the Capitol Police truck-inspection locations and policies, and of their respective travel delays. HITT's failure to raise the issue at the time (prior to award) indicates against sustaining the Claim. HITT did not suddenly, after the award, learn that it takes time to drive to and to go through the Capitol Police inspection station.

## III. CONCLUSION

For the aforesaid reasons, I conclude that HITT's offsite construction vehicle security screening was required by the relevant contract specifications, and that therefore HITT is entitled to no additional Government money for driving its dump trucks through the Capitol Police offsite checkpoint before entering the Capitol Power Plant job site.

This is the Final Decision of the Contracting Officer. You may appeal this decision to the AOC Congressional Committees with jurisdiction over the Capitol Power Plant, pursuant to the Disputes Clause in the subject Contract. If you decide to appeal, then you must, within 90 days from the date that you receive this decision, mail or otherwise furnish written notice to the Congressional Committees with jurisdiction and provide a copy to the Contracting Officer from whose Decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this Decision, and identify the contract by number. Instead of appealing this decision administratively, you may bring an action directly in the United States Court of Federal Claims within 12 months of the date that you receive this Decision.

Sincerely,

Cynthia J. Bennett
Director, Procurement Division

cc: M. Keegan, AOC Contracting Officer's Representative
B. Hitt, HITT Contracting, Inc.

# RELEVANT CONTRACT PAGES

3.1.3 Offerors are encouraged to submit all questions in writing at least five (5) working days prior to the conference. Questions will be considered at any time prior to or during the conference; however, offerors will be asked to confirm verbal questions in writing. Subsequent to the conference, an amendment to the solicitation containing an abstract of the questions and answers, and a list of attendees, will be disseminated.

3.1.4 Offerors are cautioned that, notwithstanding any remarks or clarifications given at any site visit, the pre-proposal conference or field inspection, all terms and conditions of the solicitation remain unchanged unless they are changed by amendment to the solicitation. If the answers to conference questions, or any solicitation amendment, create ambiguities, it is the responsibility of the offeror to seek clarification prior to submitting a offer.

4. INTERPRETATIONS (AOC) (SEP 1999)

4.1 Prospective offerors shall request the Contracting Officer, in writing, for an interpretation or correction of any ambiguity, inconsistency, or error in the contract documents which they may discover or which should have been discovered by a reasonably prudent offeror. Such requests or objections to materials or methods of construction shown or specified shall be directed to the attention of: Lauren Wilson, Contract Specialist, Procurement Division and received in the Procurement Division at least ten (10) calendar days prior to the date specified for receipt of proposals. Written requests shall be transmitted via facsimile to (202) 225-3221. Any interpretations or corrections, as well as any additional modifications the Contracting Officer may desire to include, will be in the form of amendments, in writing, which will be sent on the same date to all offerors and shall become a part of the contract. The Contracting Officer reserves the right to answer only such questions as have, in his opinion, a definite bearing upon the proposals to be submitted. Offerors shall acknowledge in Block 19 of the form entitled, "SOLICITATION, OFFER, AND AWARD (Construction, Alteration, or Repair)," the receipt of all amendments. Requests for oral interpretations or any other interpretations not made by amendments will not be accepted, and any information that may possibly be gained by offerors in that manner is gratuitous and not binding.

5. BID GUARANTEE (AOC) (SEP 1999)

5.1 Failure to furnish a Bid Guarantee in the required form and amount, with and as a part of the proposal, will be cause for rejection of the proposal.

5.2 The offeror shall furnish a Bid Guarantee of not less than 20% of the proposed price in the form of a firm commitment consisting of a Bid Bond, Certified Check, Cashier's Check, Irrevocable Letter of Credit, or Postal Money Order made payable to the Architect of the Capitol, or, under Treasury Department Regulations, certain bonds or notes of the United States. The Contracting Officer will return Bid Guarantees, other than Bid Bonds, (1) to unsuccessful offerors as soon as practicable after evaluation of the proposals, and (2) to the successful offeror upon execution of contractual documents and bonds (including any necessary coinsurance or reinsurance agreements), as required by the offer as accepted.

2.1.3 The Contractor shall deliver the following submittals no later than 45 days of proposed installation or use:

2.1.3.1 "As-Built or Installed" wiring and piping diagrams (Specification Section 14212, Article 1.4.E)
2.1.3.2 Electronic Schematics
2.1.3.3 Maintenance Manuals
2.1.3.4 Electronic media submittal
2.1.3.5 Keys
2.1.3.6 Accessories
2.1.3.7 Redundant Parts
2.1.3.8 Project Warranty

3. SPECIAL SECURITY REQUIREMENTS

3.1 All personnel provided by the Contractor and employed on the site of the work will be subject to a security background investigation. Each employee will be required to fill out an I.D. Request Form and U.S. Capitol Police Request for check of Criminal History Records and each employee will be photographed and fingerprinted. The Contractor shall provide any assistance required by any of its employees in completing the forms.

3.2 Prior to commencement of work, the contractor and all designated on-site employees will be required, on a one-time basis, to be fingerprinted in Washington D.C. The location for the Electronic Fingerprinting Service is the U.S. Capitol Hill Police Headquarters, 119 D Street, N.E.

3.3 While security background investigations are in process, the Contractor's employees will NOT be allowed temporary permission to work at the site. Any of the Contractor's employees who are perceived by the Contracting Officer as a security risk as a result of evidence discovered in the background security investigation, will not be issued an Identification Card, will be denied access to the site of the work, and the Contractor will be directed to remove such employee from performance of any of the contract work, whether it be on or off the work site.

3.4 An identification card, with photograph, will be prepared for each employee of the Contractor requiring access to the site. The identification card shall be dated to indicate the period of time for which it is to remain valid - from the date the employee reports for duty until the applicable date which occurs first: the expiration of the contract, or the last date of the employee's tour of duty with the Contractor.

3.5 All vehicles, and contents, used by the Contractor or his subcontractors, which enter or leave United States Government property during performance of the work, will be subject to clearance, inspection and identification procedures conducted by the United States Capitol Police. Instructions and map(s) will be provided to the contractor upon award.

3.6 All persons entering the Legislative Branch Buildings shall gain access to the building by passing through a magnetometer. In addition, all handbags and all hand-carried items shall be screened by x-ray devices prior to their entry into the building.

3.7 The Contractor is fully responsible to return:

- The ID badge of any individual employee, including subcontractor personnel, who is removed for any reason including but not limited to illness, or dismissal:

H. Staging Plan: The A/E has indicated in plan where the Contractor can stage the construction and locate the construction trailer. Submit a Staging plan indicating specifically location of the superintendent's trailer, storage and loading of materials, traffic direction and control concept and signage, security perimeter of staging area, locations of informational construction signage, locations of temporary toilets and other temporary construction, emergency facilities and resources and any other construction facilities required.

I. Storage of Materials: Materials shall be stored in a dry location, off the ground and in such manner as to prevent damage or intrusion of foreign matter and avoid interference with the activities of the Government. All materials which, in the opinion of the CM or A/E, have become damaged or otherwise unfit for use during delivery or storage shall be immediately removed from the site of the work and replaced by the Contractor at no additional cost to the Government.

1. Materials, equipment, tools and appliances shall only be stored at locations previously approved by the CM.

J. Signs and Advertising: No signs, other than safety signs, may be erected at the site. The Contractor agrees not to refer to awards in commercial advertising in such manner as to state or imply that the product or service provided is endorsed or preferred by the Federal Government or is considered by the Government to be superior to other products or services.

## 1.6 SITE SECURITY

A. Use of the Site: During the construction period, the Contractor shall have use of the premises for construction activities as described below and elsewhere in the specifications.

1. All personnel entering the Capitol Power Plant grounds will be required to check in at a security gate.
2. Clearance: Special arrangements for all deliveries shall be arranged a minimum of 48 hours in advance of arrival to permit inspection by the United States Capitol Police. ~~The Police inspection station is on P Street and South Capitol Street S.E.~~ **Coordinate deliveries with the US Capital Police by contacting them at 202-224-0908.**
3. All temporary security entrances established by the contractor must be coordinated with the United States Capitol Police.

B. All personnel working at the site shall display an identification badge. Badging shall be provided by the Government.

## 1.7 WORK UNDER OTHER CONTRACTS

A. Currently there are two other contracts under way at this site. They are the Interim Coal

B. Temporary shutdown or isolation of portions of systems may be allowed when appropriately planned and requested. Appropriate planning shall include insuring adequate heating and cooling services as required by seasonal demands throughout the duration of the project.

C. The primary construction completion requirement shall be to have new chilled water generation capacity, Chiller Nos. 7, 8 and 9 fully operational as well as the supporting equipment available for continuous use on or before 30 April 2005.

D. The Contractor area of work is defined on the Contract Drawings. The area has been defined to allow the daily operation of the plant with minimal disruption due to construction activities; however, the Contractor shall cooperate to the fullest extent to avoid disruption of plant operations.

E. Ongoing plant operations shall include, but ~~out~~ not be limited to the following:

1. Generation and distribution of adequate chilled water capacity.
2. Generation and distribution of adequate steam capacity.
3. Firm electric capacity to serve all systems required to generate and distribute adequate chilled water and steam capacity. A primary source of power as well as an alternate source shall always be available for use in case of primary source failure.
4. Fuel oil delivery and storage to the existing underground bulk storage tank. Transfer from the bulk tank to the boiler plant.
5. Coal delivery and storage.
6. Coal Ash processing and removal.
7. Sewer main operation
8. Domestic Water Service.
9. Comprehensive Site Security
10. Delivery of Materials

1.4 SITE USE BY CONTRACTOR AND SITE ACCESS

A. The construction drawings indicate space available for Contractor use.

B. Site access for the Contractor shall primarily occur from Virginia Avenue with limited use of the service entrance from E Street. All access shall be through guarded gates and allowed only to secure personnel.

1.5 OPERATING HOURS FOR CONSTRUCTION ACTIVITIES

A. Typical construction period operating hours shall commence at 7:00 a.m. and continue until 6:00 p.m. Monday through Friday. Extended hours of operations, Saturday and Sunday working hours may be requested in writing. Requests will be reviewed and approval may be granted based on project benefit.

# RELEVANT CORRESPONDENCE

# AOC-CPP \ ST REFRIGERATION PLAN PROJECT
# PRE-CONSTRUCTION MEETING

Date: April 10, 2003

Time: 1:00- 3:00 pm

Location: Ford Building
Room H2-480

Attendees:

| | |
|---|---|
| Mike Keegan- AOC | Mike Turnbull- AOC |
| Carole Boucher- AOC | Lauren Wilson- AOC |
| Steve Kucner-AOC | Chuck Iliff- AOC |
| Don Kuney- AOC | Jack Morrow- AOC |
| Ernie Fox- AOC | Bill Willis- AOC |
| Mike Mologne- HILL | Ken Dunn- HILL |
| Teena Rice- HILL | Leland Rupp- HILL |
| Rasha El Deeb- HILL | Bill Hobson- MRCE |
| David Michaelson- HITT | John Seeman- HITT |
| Dennis Viar- HITT | Howard Johnson- HITT |
| Hector Sealeg- HITT | Ronnie Holmes- HITT |
| Nazih Kiblawi- HITT | Josh Foreso- HITT |
| Steve Schoenefeldt- HITT | John Wardle- P&K |
| Glenn Meredith- P&K | Ken Pitz- RMF |
| Carl Pasquali- RMF | Jeff Gary- RMF |
| Frank Dunn- RMF | Bill Stewart- RMF |

Introduction: Mike Mologne introduced himself as the coordinator for the Pre construction meeting and welcomed everyone. Individual introductions by the attendees and hand out of the meeting agenda followed.

Mike Keegan (Director of Utilities and Power) and Mike Turnbull (Assistant Architect of the Capitol) provided brief opening remarks.

- The AOC looks forward to continued success with RMF, Hill and Hitt on the West Refrigeration Plant Expansion project. The AOC is sponsoring a team partnering session on May 1, 2003.

- Due to the deadlines imposed by the Capitol Visitor Center project, the West Refrigeration Plant Expansion is a very important and visible project for the AOC. Meeting the project schedule is a primary goal for the AOC, as the CVC, and therefore, the WRP, is a security based project.

- The AOC is very appreciative of RMF Engineering and the Smith Group who have designed an urban power plant that not only meets the additional cooling requirements for the future but also will blend in with the architecture and aesthetics of the surrounding community.

# AOC-CPP ' ST REFRIGERATION PLAN ?ROJECT PRE-CONSTRUCTION MEETING

The following issues were discussed:

1. Key Personnel: Hill provided a list of key personnel who will be onsite during the construction duration and noted that individual roles and responsibilities for the team members will be further discussed during the partnering meeting on May 1, 2003.

2. Contract: The contract award date is March 24, 2003 and the notice to proceed date is April 10, 2003. The award date is based on split year funding which is allocated for fiscal year 2003 and 2004 calendars.

    a. The contract completion date is September 1, 2005 and includes an internal milestone completion date of May 1, 2005 for the turnover of the new chiller systems.

    b. Lauren Wilson indicated that the required bonds and insurance have been approved and reminded Hitt of the contract provisions for complying with Davis Bacon Wage determination (also referenced by FAR clause 52.252-26) and weekly submission of certified payrolls.

    c. Steve Kucner provided a status for the WASA and DCRA permits and noted AOC intentions to have both permits completed by April 18, 2003.

3. Project scope: Bill Stewart provided a brief overview of the project, noting that this project will provide approximately 17,000 tons of additional cooling capacity through three new 5,700 ton capacity chillers

    a. It was noted that project option for the 1,000,000-gallon fuel tanks is being re designed to include one 400,000-gallon tank that is installed underground in lieu of above ground.

    b. Project phasing is highlighted by the WASA sewer relocation, east cooling tower demolition, service road restrictions, fuel oil relocation and new DCS controls for both the existing chiller and boiler plants. All parties agreed that regularly scheduled phasing meetings will take place.

    c. Bill noted that other infrastructure project will take place during the WRPE project and include: new 1500 KW emergency generator which will interface with the new fuel oil day tanks; Perimeter security upgrades particularly along E and New Jersey Street; and Modernization of the electrical distribution system.

4. Security: Parking is limited at the north power plant and Hitt will be allowed only 1 parking space. The AOC is reviewing Hitt's staging/site utilization plan for compliance with security fences and gates.

AOC-CPP ' :ST REFRIGERATION PLAN PROJECT
PRE-CONSTRUCTION MEETING

a. S. Kucner indicated that follow on meetings are being scheduled with U.S. Capitol Police for coordination of the contractor entrances into the power plant site.

5. Safety: Jack Morrow introduced himself as the safety representative for the AOC Capitol Power Plant. Mr. Morrow referenced OSHA standards 1910 and 1926, which are the basis for the power plant safety guidelines. Mr. Morrow listed some of the important safety requirements that will be monitored: Updated MSDS sheets; confined space certificate for entry into any part of the steam and chilled water utility tunnels; proper notification to DC safety division for lead paint, asbestos and contaminated soil.

   a. Hitt's project safety plan was submitted at the pre construction meeting and forward to Mr. Morrow for review. Hitt's safety manager noted that the company comprehensive safety plan is available for review by the AOC.

   b. Mike Keegan emphasized site clean up, particularly along South Capitol Street where the construction efforts are visible to the community

   c. All parties agreed to follow on safety meetings to further discuss the overall site specific safety plan.

6. Administrative submittals: Hill noted the critical administrative submittals, which are listed in the specifications. Hitt submitted the 100-day schedule, the quality control plan, the safety plan, and staging plan on April 10, 2003 and is striving for submission of the CPM and schedule of values by April 30, 2003.

7. Control of work: By contract, full time project superintendent, project manager and project coordinator are required on site. Hitt's staffing plan exceeds these requirements and includes senior project manager, an additional field superintendent and a quality control representative.

   a. Hitt submitted their quality control plan and is selecting their full time quality control representative. As part of document control procedures, Hill emphasized the importance of written notification (at least 72 hours in advance) for critical inspections. Particular attention is required for WASA inspections, as the AOC permit has provisions for WASA inspections of the relocated sewer. All agreed to a follow on meeting to further discuss quality control and quality assurance functions.

   b. The normal working hours are 6:30-3:00 pm; if the contractor hours are different, Hitt will notify the CM and the AOC project manager. Hitt indicated that the initial work plan includes hours from 6 am to 6 pm. Hill emphasized the importance for providing written notification when

working during the weekend. Hill also requested Hitt's cooperation in completing an after hours work request form.

c. At weekly progress meetings, Hitt will provide and review the 2-3 week advance schedules.

d. Hitt submitted their site utilization plan showing the contractor trailer locations, the temporary utilities for the trailers, staging and haul routes. The AOC review of this plan will take place during the next two weeks.

e. When know utilities are required to be shut off, Hitt is reminded to submit written outage requests 14 days in advance. As part of the submittal register, Hitt is requested to provide an overall plan, which identifies all major utilities impacted during construction. The AOC emphasized the critical coordination involving steam, chilled water and fuel oil systems and requested that Hitt and Hill closely coordinate a site-specific phasing plan.

8. Progress schedule; Hitt is submitted the preliminary 100 day schedule and is striving to submit the fully loaded CPM by April 30, 2003. In reference to the specification requiring activity durations less than 15 days, Hitt indicated that some activities, such as procurement and equipment fabrication would exceed this requirement. Hill's scheduler noted that monthly updates should include impacts due to weather and change orders.

9. Payment: The monthly payment requisitions will be coordinated with the CM. Hill reminded Hitt to update the CPM, the record as built drawings and certified payrolls prior top each monthly requisition.

    a. By contract, the unit prices are listed for contaminated soil and coal removal. Should quantities of contaminated soil and coal removal exceed the contract provisions, these unit prices will take effect.

10. Contract changes: Hill reminded Hitt to provide written notice and /or request for potential changes. Specific procedures for reviewing potential change orders will be established during follow on meetings.

11. Document control: The project document control process will be based on the use of Prolog management software. Hill is the administrator for this system and will be coordinating user access, user training and trouble shooting issues. Hill is conducting a brief overview of the prolog system on April 17, 2003 particularly for the Hitt project team members who will be utilizing the system daily.

    a. Hill requested the project team to utilize a sequential numbering system for all correspondence. A sample correspondence letter was provided.

West Refrigeration Plant Expansion Project
AOC-CPP Field Office
(202) 484-8848 phone
(202) 484-5776 fax

**Hill International, Inc.**

# Memo

**To:** Howard Johnson- HITT

**From:** Teena Rice- HILL

**CC:** File

**Date:** June 5, 2003

**Re:** Delivery Vehicle Information

---

Per the AOC, please use the attached Delivery Vehicle Information form and submit prior to scheduled delivery for processing.

I have also sent you an electronic copy of the same for your convenience.

Please ensure that the appropriate Hitt personnel are aware that this form is to be submitted and processed prior to scheduled deliveries.

If you have any questions regarding this form, please do not hesitate to contact me.

# Delivery Vehicle Information

West Refrigeration Plant Expansion
Washington, D.C.

## Trucking Company

Company Name: ____________________ Phone: ____________________

Contact Name: ____________________ Address: ____________________

____________________

## Trade Contractor

Name: ____________________ Date: ____________________

Contact: ____________________ Duration of Request Access:

Jobsite Phone: ____________________ ________________________________

## Driver / Vehicle

Driver Name: ____________________ Social Sec. No.: ____________________

Drivers License #: ____________________ State: ____________________

Vehicle Make: ____________________ Model: ____________________

Vehicle Color: ____________________ Social Sec. No.: ____________________

Drivers License #: ____________________ Truck No.: ____________________

License Plate No.: ____________________ Truck Size: ____________________

Logo on Truck: ______ Yes ______ No

Describe Logo: ________________________________________

Describe Load: ________________________________________

---

Reviewed By: ____________________ Approved By: ____________________

HILL

# Meeting Minutes

Detailed, Grouped by Each Meeting and by 'Old Business' and 'New Business' (Sorted by Item Number)

West Refrigeration Plant Project # 1

## Progress Meeting 14

| Date | Start | End | Next Meeting | Next Time | Prepared By | Company |
|---|---|---|---|---|---|---|
| 8/14/2003 | 09:00 AM | 10:00 AM | 8/21/2003 | 09:00 AM | Teena Rice | Hill International, Inc |

**Purpose**
Document the status of contractor mobilization, demolition, excavation and procurement phase activities; discuss safety and design.

**Location**
Hitt

**Next Location**
Hitt

**General Notes**
Agenda:
A. 2-Week Look Ahead
B. Old Business
C. Safety & Monitoring
D. Quality Issues
E. RFI/Submittals
F. New Business

**Attended By**
Architect of the Capitol - Steve Kucner, P.E.
Hill International, Inc - Ken Dunn
Architect of the Capitol - Chuck Iliff
Hill International, Inc - Mike Mologne
HITT Contracting - Howard Johnson
HITT Contracting - John Seeman
T Contracting - Josh Foreso
Contracting - Steve Schoenefeldt
RMF Engineering, Inc. - Jeff Cerquetti
Ross Infrastructure - Carl Pasquali
RMF Engineering, Inc. - William Stewart
HITT Contracting - David Michaelson
RMF Engineering, Inc. - Jeff Gary

**Non-Attendees**

| Item | Meeting Item Description | Resp | Status | Due Date | Compl'd | Cls'd |
|---|---|---|---|---|---|---|
| **Old Business** | | | | | | |
| **Phasing Plan** | | | | | | |
| 004-006 | 7/10: Hitt is striving to complete overall summary of phasing and utility outage plan by 7/17/03. 7/17 (7/24): No change. 7/31: Hitt's schedule for ash handling fuel oil tanks and Washington Gas reroute received. 8/7: Hitt to confirm outage durations and dates. 8/14: Meeting held 8/13/03; the AOC expressed concern about the ash system outage (in excess of 4 weeks). | Steve Schoenefeldt (HITT); | In Progress | | | No |
| **MEP Value Engineering** | | | | | | |
| 005-003 | 7/3: Hill issued RMF schematics for potential changes to the chilled water and condenser water systems. These schematics are for information only. Final drawings to follow. 7/10: RMF is striving for completed drawings including I-line electrical by 7/17/03. 7/17: Plan drawings are complete and are being delivered for the AOC review. 7/24: Drawings received (plan view as well as 1-line electrical). RFP to follow. 7/31: Meeting is | Steve Kucner, P.E. - AOC; | In Progress | | | No |

HILL

Meeting Minutes
Detailed, Grouped by Each Meeting and by 'Old Business' and 'New Business' (Sorted by Item Number)

| Item | Meeting Item Description | Resp | Status | Due Date | Compl'd | Cls'd |
|---|---|---|---|---|---|---|
| Old Business | | | | | | |
| | PA. The AOC noted potential design change consisting of 3 electric driven 5400-ton chillers in lieu of 2 steam driven and 1 electric driven chiller arrangement. 7/31: Further discussions will take place at 8/1/03 meeting. 8/7: Meeting held 8/1/03. RFP to follow. 8/14: This item is being tracked under item 5-3. Final entry. | | | | | |

| Item | Meeting Item Description | Resp | Status | Due Date | Compl'd | Cls'd |
|---|---|---|---|---|---|---|
| New Business | | | | | | |
| Partnering | | | | | | |
| 014-001 | Meeting is schedule for 9/3/03. | Mike Mologne (HILL) | In Progress | | | No |
| Crack Monitoring | | | | | | |
| 014-002 | Hitt will record gauges every Friday morning. | Steve Schoenefeldt (HITT) | In Progress | | | No |
| Chiller Submittals | | | | | | |
| 014-003 | RMF requested update on the next chiller submittal. | Glenn Meredith (P & K) | In Progress | | | No |
| Monitoring Wells | | | | | | |
| 014-004 | Hitt will resend RFI pertaining to maintenance of three existing monitoring wells. | Mike Mologne (HILL) | In Progress | | | No |
| Coordinated Drawings | | | | | | |
| 14-005 | Hitt requested conformed set of specifications and full size drawings for reference only. | Mike Mologne (HILL) | In Progress | | | No |
| Existing CPP As-builts | | | | | | |
| 014-006 | Hitt is reproducing copies of the existing CPP As-builts for the project team. | Josh Foreso (HITT) | In Progress | | | No |

**HITT**

September 11, 2003

RECEIVED
SEP 12 2003

Mr. Mike Mologne
HILL International
New Jersey and "E" Street, S.E.
Washington, D.C. 20003

RE: West Refrigeration Plant Expansion
Security Truck Inspections

Dear Mike:

As previously discussed HITT's Subcontractor, The Anderson Company has issued a claim for time and money due to the means in which the incoming trucks are being inspected at an offsite inspection station. Currently HITT is attempting to mitigate this issue with The Anderson Company to avoid submitting a claim to the Owner. However, to date we have been unsuccessful in our attempts and are forwarding the attached correspondence to notify the Owner of the current situation. HITT will continue to attempt to mitigate this issue, but feel this claim needs to be forwarded to the Owner.

HITT, Hill, AOC, Anderson

Sincerely,

Steve Schoenefeldt
HITT Contracting, Inc.

for Haul route to change from A to A - [illegible] - B; B being the site where Anderson locates the screening shed [illegible].
The [illegible] is not [illegible] to inspect; They acknowledge [illegible] CVC Stream Line.

cc. AOC

HITT TO HILL "049"

AOC is not acknowledging [illegible] but [illegible] about the route.



[illegible] Anderson will [illegible] [illegible]

9469 HAWKINS DRIVE
MANASSAS, VIRGINIA 20109

June 13, 2003

Mr. Stephen Schoenefeldt
HITT Contracting Inc.
2704 Dorr Ave.
Fairfax, Virginia 22031

Re: AOC – West Refrigeration Plant Expansion Project (TAC Job #2315)
Subj.: Truck Inspections

Dear Stephen,

The Anderson Company, L.L.C. is writing this letter to notify HITT Contracting that we consider the current method of truck inspections a change to our contract. Per article 3.5 of the supplementary conditions, all vehicles which enter or leave the property are subject to clearance, inspection, and identification procedures by the United States Capitol Police. No where within the contract documents and specifications is there a reference to having the vehicles searched at a different location than the job site. This week TAC was informed that all trucks will be required to go to another site after every round to be inspected via a X-ray machine. This inspection adds a minimum of 30 minutes per truck round. This is a drastic increase from our estimated truck times and will have an overall impact on us for more than $200,000.00. This will also have a significant effect on our daily production and the overall project schedule. TAC would like to suggest that the trucks be searched onsite in some manner especially since a large majority of the trucks will be entering the site empty. It makes no sense conducting a security inspection several blocks away from the site. TAC is more than willing to meet to discuss this issue. TAC reserves all rights associated with this change in condition. Should you have any questions or require any further clarification, please do not hesitate to call.

Sincerely,

Jason S. Brown
Project Manager
The Anderson Company, L.L.C.

Cc: File

PHONE:(703) 393-4000
FAX: (703) 393-4010

# HITT

HITT Contracting Inc.
2704 Dorr Avenue
(703) 846-9000 FAX (703) 846-9110

TRANSMITTAL

| | |
|---|---|
| To: | HILL International |
| | New Jersey & E Streets, S.E. |
| | Washington, D.C. 20003 |
| Attn: | Mike Mologne |

RE: AOC - West Refrigeration Plant
Capitol Power Plant
HITT Job #: 21-0745

16-Oct-03

Hand Carried

| Copies | Date | Number | Description |
|---|---|---|---|
| 2 | | | Reference HITT PCO: H-051. Truck Driving Directions |

| | |
|---|---|
| X | Attached |
| | Under Separate Cover |

MATERIAL

| | |
|---|---|
| | Shop Drawings |
| | Product Data |
| | Plans |
| | Samples |
| | Specifications |
| | Copy of Letter |
| | Change Order |
| | Addenda |
| X | Other |

PURPOSE

| | |
|---|---|
| | For Pricing |
| | For Approval |
| X | Your Use |
| | As Requested |
| | Review & Comment |
| | Approved as Noted |
| | Return for Corrections |
| | Resubmitted for Approval |
| | Approved |
| | For Record |
| | Submit for Distribution Copies |
| | Return Corrected (Quantity) |
| | Other |
| | after Loan to Us |

REMARKS Please see the attached correspondence and driving directions provided by the Anderson Company regarding their claim for additional compensation related to the offsite security inspection. Please review, comment and advise how we should proceed.

Signature: Steve Schoenefeldt
202-554-2326

If enclosures are not as noted, kindly notify us at once.

[illegible]EGAN, AOC
[illegible]UFF, AOC
KUCNER, AOC
[illegible]

DISTRIBUTED

76

THE ANDERSON COMPANY, L.L.C.
9469 HAWKINS DRIVE
MANASSAS, VIRGINIA 20109

October 14, 2003

Mr. Stephen Schoenefeldt
HITT Contracting Inc.
2704 Dorr Ave.
Fairfax, Virginia 22031

Re: AOC – West Refrigeration Plant Expansion Project (TAC Job #2315)
Subj.: Truck Inspections Claim

Dear Stephen,

Per our last meeting discussing our truck inspections claim at the West Refrigeration Plant Expansion Project on October 1, 2003, the AOC and HITT Contracting both asked that TAC go back and review the truck routes into the project. TAC has since contacted the companies responsible for hauling the soil and they have provided us with directions and time durations under both circumstances, going directly to the project as well as reporting to the offsite inspection station first. As shown, the difference is approximately 30 minutes per truck load. Attached please find these directions as well as a map that clearly illustrates the difficulty involved in reporting to the inspection station. Per our last meeting when the AOC even admitted that they didn't know what the inspection procedures would be at the time of the bid, TAC maintains that there is no way we could have reasonably anticipated that the inspections would be held offsite.

Based on the attached information as well as our previous correspondence, TAC will continue to claim an additional 30 minutes of trucking for each load both hauled off and on to the West Refrigeration Plant Expansion Project. As of October 11, 2003, TAC has hauled off 1,369 loads of material. Based on the additional 30 minutes per truck load to report to the offsite inspection station, this equates to an additional 685 hours of truck time. Therefore, the total additional trucking cost associated with the offsite inspection station through October 11, 2003 is **$44,525.00**. Based on the total estimated volumes of material to be hauled off and borrowed on, the total claim will be in excess of $350,000.00. These values to not include the additional equipment time, manpower, and extended overhead associated with the production loss. TAC reserves our rights to all impacts associated with this change in condition. TAC would like to suggest another onsite meeting to resolve this issue immediately based on the financial impact to the project. Should you have any questions or require any further clarification, please do not hesitate to call.

PHONE:(703) 393-4000
FAX: (703) 393-4010

Sincerely,

Jason S. Brown
Project Manager
The Anderson Company, L.L.C.

Cc: File

# SoilSafe

*Recycling of Contaminated Soil and Industrial Waste.*

Celebrating our 12th Anniversary serving our customers

## FAX TRANSMITTAL

TO: Jason

FROM: Harold

COMPANY: Anderson

DATE: 10/10/03

PHONE NUMBER:

TOTAL NO. OF PAGES INCLUDING COVER: 3

FAX NUMBER: 1-703-393-4010

RE:

MESSAGE:

Jason
Heres the directions with the times you where looking for. Any Questions, Please call me.

Harold

*Turnkey Services Provided by Soil Safe*

- Recycling of Petroleum Contaminated Soils & Industrial Waste
- Loading / Transportation / Lab Analysis
- On-Site Recycling / Treatment

Landfill Capping and Design

Treatability Studies / Mix Design Development

Quality Recycled Product for Various End Use Applications

*2700 Lighthouse Point East, Suite 402 • Baltimore, MD 21224*

*Phone (410) 327-5753 • Fax (410) 327-6960*

*A PERMANENT SOLUTION TO SOIL RECYCLING*

R. L. HALL TRUCKING, INC.
3985 FIRST ST. S.W.
WASHINGTON, D. C. 20032
PHONE 202-488-0798
FAX 202-563-3942

Oct 2 2003

Route going to the check point, then to the job:

#1. 395 South to 3rd St. Tunnel
#2. 3rd St. Tunnel to D St.
#3. left on D St.
#4. left on 3rd St. — ~~#5.~~ Come to check point (Corner of 3rd & Constitution)
#6. make a U-turn on Constitution
#7. left on 3rd St.
left on Independence
#9. Right on Washington
#10 left on E St.
11. Right on New Jersey
12 left on K St.
13 left on 2nd St.
14 left on Va. — go approximately 1/4 mile into the plant.

Attn: Harold Jenkins

R. L. HALL TRUCKING, INC.
3985 FIRST ST. S.W.
WASHINGTON, D. C. 20032
PHONE 202-488-0798
FAX 202-563-3942

Oct 2 2003

Route going to the check point, then to the job:

395 South to 3rd St. Tunnel
3rd St. Tunnel to D St. (5 mins)
left on D St. (3 minutes)
left on 3rd St. — Come to check point (Corner of 3rd & Constitution) (15 minutes)
make a U-turn on Constitution (5 minutes)
left on 3rd St (3 minutes)
left on Independence 4 minutes
Right on Washington (2 minutes)
left on E St. (3 minutes)
left on New Jersey (2 minutes)
Right on K St. (2 minutes)
left on 2nd St. (3 minutes)
left on Va. — go ~~approximately~~ ¼ mile into the plant.

Approximately 47 minutes

81

10-14-03 07:33 FROM-SOIL SAFE 703 393 4980; OCT-14-03 8:41AM; PAGE 7/9
4103276110 T-724 P01/01 U-582

## Route going directly to the job.

Penn. Ave. to 295
295 to South Capital St. S.E.
~~South~~ Capital to Washington
Washington to E st
Right on New Jersey Ave.
left on K St.
left on 2nd St.
left on Va. - go approximately ½ mile into the plant

[illegible] traffic 20 minutes


Joins Map
77°00'00"
800,000 FT
Gonzaga College
Superintendent of Documents
Union Sta (MARC)(AMTRAK)
Union Sta
395
Law Ctr
US Capitol
CONSTITUTION
Supreme Court
US Capitol
Library of Congress
AVENUE
THIRD ST
WASHINGTON
SOUTH CAPITOL
NEW JERSEY
VIRGINIA AVE
Saint Dominic
FREEWAY
Amidon ES
Southeastern
Waterside Mall
Arena Stage
Van Ness ES
LEXINGTON
ACKER ST
BROWNS CT
Seward
395 to 3rd St. Tunnel
3rd St. Tunnel to D St.
Left on D St.
Left on 3rd St.
#5. Come to Checkpoint at intersection of Constitution and 3rd Street by heading East on Constitution
#6. Make a UTURN on Constitution
#7. Make a Left on 3rd St.
#8. Make a Left On Independence
Make a right on Washington
#10 Make a Left on E St.
#11. Make a Right on New Jersey
#12. Make a Left on to K St
#13. Make a Left on to 2nd St.
#14. Make a Left on Va.
83

T BY: THE_ANDERSON CO.; 703 393 4980; OCT-14-03 8:42AM; PAGE 9/9



THE ARCHITECT OF THE CAPITOL 1793

October 19, 2003

Washington, DC 20515

Mr. David Michaelson
Sr. Vice President
HITT Contracting, Inc.
2704 Dorr Avenue
Fairfax, VA 22031

- VIA FACSIMILE and U.S. MAIL*

Reference: WEST REFRIGERATION PLANT EXPANSION PROJECT
PROGESS ISSUES.

Dear Sir:

**ANDERSON TRUCK INSPECTION CLAIM:**
I make reference to the letter from The Anderson Company, L.L.C. to Hitt Contracting dated October 14, 2003. Please be advised that the owner totally rejects any responsibility for this claim based on a total lack of merit. I also note that in our joint (Hitt, Anderson, AOC) meeting several weeks ago, Anderson agreed to provide specific information "the next day", that was not provided.

**EXCAVATION PROGRESS:**
The oversight of our CM coupled with our own observations indicates that your excavation and trucking contractor is making insufficient progress, productivity appears to be lacking and there seems to be an insufficient number of trucks assigned to this project. In light of our significant financial commitment to this project and the criticality of the schedule, I must insist that the appropriate corrective actions be taken immediately.

**DISPOSAL OF CONTAMINATED SOIL:**
Please be aware that remains a very serious open issue between us. We continue to gather data, disposal quotes and information that leads us to believe that the pricing structure requires additional discussion and agreement. In the unlikely event that we are unable to agree on a final pricing arrangement, we are prepared to issue a unilateral contract modification.

Sincerely,

Michael J. Keegan
Director Utilities & Power
Architect of the Capitol

CC: Malone

AOC - HITT

E.B(___, ___, ___)

85

HITT

December 9, 2003

Mr. Mike Mologne
HILL International
New Jersey and "E" Street, S.E.
Washington, D.C. 20003

RE: West Refrigeration Plant Expansion
The Anderson Company Truck Inspection Claim
HITT to HILL "079"

RECEIVED
DEC 09 2003

Dear Mike:

Please find the attached formal request for a change order from the Anderson Company for an equitable adjustment for the offsite security truck inspections. This claim does not include any costs and or time analysis as performed by HITT Contracting.

Please review the above information and advise.

Sincerely,

Stephen J. Schoenefeldt
HITT Contracting, Inc.

M. Keegan
C. Iliff
File PCO 13/(H-051), Gr.2

86

THE ANDERSON COMPANY. L.L.C.
9469 HAWKINS DRIVE
MANASSAS, VIRGINIA 20109

November 25, 2003

Mr. Stephen Schoenefeldt
Hitt Contracting, Inc.
2704 Dorr Avenue
Fairfax, VA 22031

Re: West Refrigeration Plant Expansion Project
Security Inspection Request for Change Order

Gentlemen:

The purpose of this letter is to submit a formal change order request in connection with the situation relating to the truck inspection cost on the above-referenced project and to request a Contracting Officers Decision. Although this matter has been the subject of considerable correspondence, we wanted to review the issue fully in requesting a decision.

Specification Section 01110, paragraph 1.3 (B) defines the contractor area of work. It essentially limits the area of work to the specific site shown on the contract drawings. Moreover, Section 1.4(B) gives the contractor specific direction as to how the site will be accessed:

> B. Site access for the Contractor shall primarily occur from Virginia Avenue with limited use of the service entrance from E Street. <u>All Access shall be through guarded gates and allowed only to secured Personnel.</u>

The Supplementary Conditions, paragraph 3.5 states as follows:

> All vehicles, and contents, used by the Contractor or subcontractors, which <u>enter or leave United States government property</u> during performance of the work, will be subject to clearance, inspection and identification procedures conducted by the United States Capitol Police. Instructions and map(s) will be provided to the Contractor upon award.

A review of Section 3.5 could only leave the bidder to understand that inspection would be conducted when the contractor "enters or leaves" government property.

PHONE:(703) 393-4000
FAX: (703) 393-4010

Nothing in the bid documents indicated that inspections would be conducted at remote locations. To the contrary, Specification Section 0110, paragraph 1.4(B) quoted above, indicates that access will occur only in specific locations of the site through "guarded gates". It was a more than reasonable assumption that inspection would be conducted at the site.

As you know, this did not occur. Rather, the government desired to have inspections performed at another site which was many blocks from the project. Having these off-site inspections added a minimum of thirty minutes of truck time that obviously greatly increases Anderson's hauling costs. Accordingly, by letter dated June 13, 2003, (Exhibit 1) Anderson put Hitt on notice of this situation. Anderson was directed to continue to proceed with the disposal operations, and therefore, reconfirmed by its letter dated July 22, 2003 (Exhibit 2) that it considered the directives to be a change to the contract and that it would seek additional cost for same.

On September 5, 2003 (Exhibit 3), Anderson updated its claim through August 31, 2003, noting that to date, it had incurred 446 hours of additional truck time with a value $28,990.00. On October 14, 2003, Anderson again notified Hitt of the status of its claim. Pursuant to that letter, Anderson advised that as of October 11, 2003 the claim had increased to $44,525.00. Anderson further provided a map and directions which documented the 30 minutes of additional time. A response was received from Michael J. Keegan on October 19, 2003, in which the proposal was rejected without any further explanation. (Exhibit 4)

As of November 15, 2003, we have incurred $70,037.50 in additional cost.

It is readily apparent that conduction inspections away from the site are a change to our contract. Nothing in the contract requires such inspections, nor is there any indication that this might occur. To the contrary, the contract language indicates only that the inspections will be conducted when vehicles "enter or leave" government property. No maps or instructions were ever provided, and government representatives admitted that they were not certain where the inspections would actually be performed.

Anderson's position is further supported by the lack of logic in the government's entire inspection process. The government is currently conducting inspections many blocks away from the project. During the period of time that a truck leaves the inspection and arrives at the project, a truck could theoretically be subject to tampering or other violations of security. The methods used by the government violate even the most basic security procedures, and it is not foreseeable that Anderson would anticipate this. I doubt that any outside party looking at the government's method of inspection would concur that it was either described in the contract documents or that it was in conformance with reasonable security procedures.

Accordingly, Anderson continues to request additional compensation. Please submit this proposed change order to the contracting officer, and request a final decision. Your immediate attention to this matter would be appreciated.

Very Truly Yours,
The Anderson Company, LLC

Stuart Himelfarb
Executive Vice President

THE ARCHITECT OF THE CAPITOL
1793

Washington, DC 20515

December 21, 2003

RECEIVED
DEC 23 2003

Mr. Stephen Schoenefeldt
Hitt Contracting, Inc.
2704 Dorr Avenue
Fairfax, VA 22032

RE: Your letter of December 21, 2003, RE: "West Refrigeration Plant Expansion The Anderson Company Truck Inspection Claim HITT to HILL "079".

Dear Mr. Schoenefeldt:

Our construction manager has requested a response from the owner. The intent of your letter is unclear. As you are fully aware, we have no contractual relationship with The Anderson Company therefore cannot address nor respond to issues brought forth by them.

Furthermore, Mr. Seaman and Mr. Michaelson have both expressed to us that they do not see any merit in this issue of trucking delays and in fact requested that I write a formal letter to them rejecting this issue.

Specifically, in response to your request to review the information and advise. Please provide me with a letter that, in fact, requests consideration of this issue from Hitt Contracting, Inc. and I will provide a formal response. My assumption is that your written position will be no different from that, which has been expressed verbally on a number of occasions, i.e.: you see mo merit in Anderson's position.

Sincerely,

Michael J. Keegan
Contracting Officers Representative
West Refrigeration Plant Expansion Project

Cc: M. Mologne
C. Iliff
S. Kucner

THE ARCHITECT OF THE CAPITOL
1793

Washington, DC 20515

February 15, 2004

Steve Schoenefeldt
Hitt Contracting, Inc.
2755 Dorr Avenue
Fairfax, VA 22032

Re: *"Anderson Company Claim to Hitt Contracting – Truck Inspections*

Dear Mr. Schoenefeldt:

As requested verbally by yourself and previously addressed in my letter of December 21, 2003. The owner and construction manager once again reaffirm that we find no merit in the contention by the Anderson Company that U.S. Capitol Police truck inspection procedures have caused them time delays and excess costs.

~~Additionally~~, as you are aware, Mr. Michaelson, Mr. Seeman and yourself have all expressed to us that you agree with the owner's position that this issue has no merit.

In that we have no contractual relationship with the Anderson Company, this letter is provided as a courtesy to Hitt Contracting, Inc.

Sincerely,

Michael J. Keegan
Contracting Officer's Representative
West Refrigeration Plant Expansion Project
Architect of the Capitol

EIVED
FEB 18 2004
Y: DK

EXHIBIT A

91

THE ANDERSON COMPANY, L.L.C.
9469 HAWKINS DRIVE
MANASSAS, VIRGINIA 20109

March 1, 2004

Mr. Stephen Schoenefeldt
Hitt Contracting, Inc.
2704 Dorr Avenue
Fairfax, VA 22031

Re: West Refrigeration Plant Expansion Project
Security Inspection Request for Contracting Officers Final Decision

Gentlemen:

The purpose of this letter is to request a formal decision from the Contracting Officer in connection with the situation relating to the truck inspection cost on the above-referenced project and to request a Contracting Officers Final Decision. Although this matter has been the subject of considerable correspondence, we wanted to review the issue fully in requesting a decision prior to any denial/and resubmital as a claim

Specification Section 01110, paragraph 1.3 (B) defines the contractor area of work. It essentially limits the area of work to the specific site shown on the contract drawings. Moreover, Section 1.4(B) gives the contractor specific direction as to how the site will be accessed:

> B. Site access for the Contractor shall primarily occur from Virginia Avenue with limited use of the service entrance from E Street. All Access shall be through guarded gates and allowed only to secured Personnel.

The Supplementary Conditions, paragraph 3.5 states as follows:

> All vehicles, and contents, used by the Contractor or subcontractors, which enter or leave United States government property during performance of the work, will be subject to clearance, inspection and identification procedures conducted by the United States Capitol Police. Instructions and map(s) will be provided to the Contractor upon award.

A review of Section 3.5 could only leave the bidder to understand that inspection would be conducted when the contractor "enters or leaves" government property.

PHONE:(703) 393-4000
FAX: (703) 393-4010

EXHIBIT B

Nothing in the bid documents indicated that inspections would be conducted at remote locations. To the contrary, Specification Section 0110, paragraph 1.4(B) quoted above, indicates that access will occur only in specific locations of the site through "guarded gates". It was a more than reasonable assumption that inspection would be conducted at the site.

As you know, this did not occur. Rather, the government desired to have inspections performed at another site which was many blocks from the project. Having these off-site inspections added a minimum of thirty minutes of truck time that obviously greatly increases Anderson's hauling costs. Accordingly, by letter dated June 13, 2003, (Exhibit 1) Anderson put Hitt on notice of this situation. Anderson was directed to continue to proceed with the disposal operations, and therefore, reconfirmed by its letter dated July 22, 2003 (Exhibit 2) that it considered the directives to be a change to the contract and that it would seek additional cost for same.

On September 5, 2003 (Exhibit 3), Anderson updated its claim through August 31, 2003, noting that to date, it had incurred 446 hours of additional truck time with a value $28,990.00. On October 14, 2003, Anderson again notified Hitt of the status of its claim. Pursuant to that letter, Anderson advised that as of October 11, 2003 the claim had increased to $44,525.00. Anderson further provided a map and directions which documented the 30 minutes of additional time. A response was received from Michael J. Keegan on October 19, 2003, in which the proposal was rejected without any further explanation. (Exhibit 4)

As of November 15, 2003, we have incurred $70,037.50 in additional cost.

It is readily apparent that conduction inspections away from the site are a change to our contract. Nothing in the contract requires such inspections, nor is there any indication that this might occur. To the contrary, the contract language indicates only that the inspections will be conducted when vehicles "enter or leave" government property. No maps or instructions were ever provided, and government representatives admitted that they were not certain where the inspections would actually be performed.

Anderson's position is further supported by the lack of logic in the government's entire inspection process. The government is currently conducting inspections many blocks away from the project. During the period of time that a truck leaves the inspection and arrives at the project, a truck could theoretically be subject to tampering or other violations of security. The methods used by the government violate even the most basic security procedures, and it is not foreseeable that Anderson would anticipate this. I doubt that any outside party looking at the government's method of inspection would concur that it was either described in the contract documents or that it was in conformance with reasonable security procedures.

Accordingly, Anderson continues to request additional compensation. Please submit this proposed change order to the contracting officer, and request a final decision. Your immediate attention to this matter would be appreciated.

Very Truly Yours,
The Anderson Company, LLC

Stuart Himelfarb
Executive Vice President

SAH/amg

... COMPANY, L.L.C.
9469 HAWKINS DRIVE
MANASSAS, VIRGINIA 20109

June 13, 2003 EXHIBIT 1

Mr. Stephen Schoenefeldt
HITT Contracting Inc.
2704 Dorr Ave.
Fairfax, Virginia 22031

Re: AOC – West Refrigeration Plant Expansion Project (TAC Job #2315)
Subj.: Truck Inspections

Dear Stephen,

The Anderson Company, L.L.C. is writing this letter to notify HITT Contracting that we consider the current method of truck inspections a change to our contract. Per article 3.5 of the supplementary conditions, all vehicles which enter or leave the property are subject to clearance, inspection, and identification procedures by the United States Capitol Police. It then states that instructions and maps will be provided upon award. TAC never received any instructions or maps upon the award of our contract which would lead us to believe that the vehicle inspection ...ld not take place onsite. No where within the contract documents and specifications is there a reference to having the vehicles searched at a different location than the job site. This week TAC was informed that all trucks will be required to go to another site after every round to be inspected via a X-ray machine. This inspection adds a minimum of 30 minutes per truck round. This is a drastic increase from our estimated truck times and will have an overall impact on us for more than $200,000.00. This will also have a significant effect on our daily production and the overall project schedule. TAC would like to suggest that the trucks be searched onsite in some manner especially since a large majority of the trucks will be entering the site empty. It makes no sense conducting a security inspection several blocks away from the site. TAC is more than willing to meet to discuss this issue. TAC reserves all rights associated with this change in condition. Should you have any questions or require any further clarification, please do not hesitate to call.

Sincerely,

Jason S. Brown
Project Manager
The Anderson Company, L.L.C.

... File

PHONE:(703) 393-4000
FAX: (703) 393-4010

THE ANDERSON COMPANY. L.L.C.
9469 HAWKINS DRIVE
MANASSAS, VIRGINIA 20109

July 22, 2003 EXHIBIT 2A

Mr. Stephen Schoenefeldt
HITT Contracting Inc.
2704 Dorr Ave.
Fairfax, Virginia 22031

Re: AOC – West Refrigeration Plant Expansion Project (TAC Job #2315)
Subj.: Truck Inspections

Dear Stephen,

Per our conversations yesterday with HITT Contracting Inc., The Anderson Company, L.L.C. is being directed to proceed with the disposal operation at the West Refrigeration Plant Expansion Project. This directive includes having the trucks report to an offsite location several blocks away to be inspected via an X-ray machine. Per my letter sent on June 13, 2003, TAC views this as a change to our contract and we reserve our rights to all impacts associated with this change. TAC is requesting complete reimbursement for the additional trucking costs and production loss from HITT regardless if HITT receives compensation from the owner. Upon receipt of a written directive to proceed under these conditions, TAC will proceed with our disposal operation and claim all additional costs. Should you have any questions or require any further clarification, please do not hesitate to call.

Sincerely,

Jason S. Brown
Project Manager
The Anderson Company, L.L.C.

Cc: File

PHONE:(703) 393-4000
FAX: (703) 393-4010

THE ANDERSON COMPANY. L.L.C.
9469 HAWKINS DRIVE
MANASSAS, VIRGINIA 20109

July 22, 2003 EXHIBIT 2B

Mr. John F. Seeman
HITT Contracting Inc.
2704 Dorr Ave.
Fairfax, Virginia 22031

Re: AOC – West Refrigeration Plant Expansion Project (TAC Job #2315)
Subj.: Truck Inspections

Dear John,

The Anderson Company, L.L.C. is in receipt of your direction to proceed with the disposal operation at the West Refrigeration Plant Expansion Project. Please be advised that per our letters dated June 13, 2003 and July 22, 2003 we view this as a change to our contract and will pursue this matter as a claim. Should you have any questions or require any further clarification, please do not hesitate to call.

Sincerely,

Jason S. Brown
Project Manager
The Anderson Company, L.L.C.

Cc: File

PHONE: (703) 393-4000