**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| HITT CONTRACTING, INC.,<br>Plaintiff,<br>v.<br><br>THE UNITED STATES,<br>Defendant. | Civil Action No. 07-823C<br>(Chief Judge Damich) |

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## I. Introduction

The United States' position as set forth in its Cross-Motion for Summary Judgment is dependent on the premise that Hitt and Anderson should have anticipated based on the contract language that security inspections for vehicles entering the West Refrigeration Expansion Project ("the Project") might occur several blocks from the entrance to the Project. This premise is false. No reasonable person would expect security inspections to take place anywhere but at the entrance to the secure area. As a result, The United States' argument is invalid, and Hitt is entitled to summary judgment as to liability.

## II. The United States' Interpretation of the Contract Is Unreasonable

Parsing through the individual contract specifications related to site access and security inspections is not particularly useful in determining whether the contract required inspections to take place on site. The specifications did not explicitly say where inspections would occur. The provisions regarding maps, coordination of deliveries with

the Capitol Police, and site access are all logically consistent with on-site inspections or off-site inspections.

The United States' concludes from this lack of specificity as to the location of inspections that the Capitol Police could conduct the inspections anywhere, but this conclusion goes too far. If the lack of specificity in the contract gave the Capitol Police unfettered discretion in determining the location of the inspections, then it could have chosen to conduct them in Pennsylvania or any other place. After all, there is nothing in the specifications which is inconsistent with conducting the inspections in Pennsylvania.

The United States would not, however, argue that the Capitol Police were entitled to conduct inspections in Pennsylvania. That would be ridiculous. No reasonable person would read this contract and conclude that security inspections might take place in Pennsylvania, and a court interpreting contract language must "[determine] what a reasonable person in the position of the parties would have thought the disputed language meant." *Washington Properties, Inc. v. Chin, Inc.*, 760 A.2d 546 (D.C. 2000).

This principle is the rule of contract interpretation which governs this case. Thus, the question before the Court is not whether the specifications explicitly require on-site inspections, but whether a reasonable person entering into this contract would believe that the inspections might take place 6-7 blocks away from the Project site. The answer is no. Therefore, the decision to move the security inspections to a remote location was a change to the contract and Hitt is entitled to additional compensation for the extra costs resulting from this change.

A reasonable person entering into this contract would understand that all vehicles entering the Project would be subject to inspection by the Capitol Police. He or she

would also conclude, as Hitt did, that the inspections would take place at the entrance to the Project. Even though the contract does not specify a location, experience and common sense dictate this conclusion.

Most people have first-hand experience with security inspections. We go through them at airports and coming into courthouses and other public buildings. Invariably, these inspections take place at the entrance to the secure area. The United States has not pointed to any example in common experience where this is not the case. Thus the fact that the contract did not explicitly specify the location of the security inspections would not be surprising to a reasonable person. It goes without saying that security inspections take place at the entrance to the secure area. If they were going to take place somewhere other than the expected location, the contract would say so explicitly.

Common sense also dictates the conclusion that security inspections would take place at the entrance to the Project. Inspecting trucks several blocks away and then releasing them unattended into the streets of Washington, DC for up to 15 minutes hardly seems like security at all. It would be a simple matter for a truck with one accomplice to take on guns or explosives while it was unattended in the streets. The arrangement is counterintuitive to say the least. No reasonable person would expect this to be the procedure.

Nor would the contract specifications inform a reasonable person that he or she could not rely on common sense and experience in determining where the security inspections would take place or that further inquiry was required. The fact that maps and directions were to be provided is not inconsistent with the obvious conclusion that security inspections would take place at the entrance to the Project. They could show

where the vehicles were to line up while awaiting inspection, or how the vehicles were to leave the inspection station. If this provision were supposed to alert bidders that inspections might take place off site it would have been simple enough to identify the location or state that the location was to be determined.[1]

Nor does the contract's direction to "coordinate deliveries with the Capitol Police" indicate that inspections would take place off site. It does not direct the contractor to ask the Capitol Police where inspections would take place, but only to coordinate deliveries. This implies that the Capitol Police needed to know when deliveries would be made so they could have personnel available to perform security inspections, not that the location was to be other than at the entrance to the Project.

Finally, the fact that section 1.6 of the contract originally provided for use of an off-site inspection facility located at P Street and South Capitol Street does not indicate that inspections would take place off site. This language was stricken from the contract prior to final bids. A reasonable contractor would assume that if a different off-site inspection facility had been identified, it would have been specified.[2] Otherwise he or she would conclude that the inspections would take place at the normal location and that the stricken language was from a similar specification in another project which was

[1] Hitt has no information about when or why the Capitol Police decided to move the inspection station to the Capitol Visitors Center project. The Capitol Police would not provide information voluntarily, and the Board does not have subpoena power.

[2] Before the Board, The Architect of the Capitol argued that Hitt should have known that off-site inspections were to be anticipated because a separate contract it had with AOC, The Interim Coal Handling Facility, specified off-site inspections. This argument is flawed for two reasons. First, a reasonable person participating in a competitive bidding process would not assume that he or she would need to rely on previous experience to interpret the contract given that none of the other prospective bidders have the experience. Second, as stated in the affidavit of John Seeman, which was submitted to the Board with Plaintiff's opposition to the motion for summary judgment, even though inspections for the Interim Coal Handling Facility project were specified to take place off-site, they in fact took place on site.

supposed to have been deleted or that it was some other kind of administrative or typographical error.

Hitt was entitled to assume based on common sense and experience that security inspections would take place at the entrance to the Project. No reasonable person would reach any other conclusion by examining the specifications. If the Architect of the Capitol wanted to specify a different location, it should have done so, or at least informed the contractor that the location had not been determined. Instead, the Capitol Police began the project by performing security inspections at the entrance before moving the inspections to a remote location for no apparent reason. This was a change to the contract, and Hitt is entitled to additional compensation.

**III. Hitt Was Not Required to Request a Clarification of the Contract**

Hitt had no obligation to seek clarification from the contracting officer with respect to the location of security inspections. Because the only reasonable interpretation of the contract was that security inspections would take place on site, there was no ambiguity in the contract, and no need to seek clarification.

Article 4 of the solicitation conditions for the project provided that "Prospective offerors shall request the Contracting Officer, in writing, for an interpretation or correction of any ambiguity, inconsistency, or error in the contract documents which they may discover or which should have been discovered by a reasonably prudent offeror." This is essentially a statement of the patent ambiguity doctrine, which prevents a contractor from seeking additional compensation based on a patent ambiguity in the contract when it fails to seek clarification from the government before submitting a bid. See Beacon Constr. Co. of Mass. V. United States, 314 F.2d 501 (Ct. Cl. 1963).

As the government points out at page 8 of its brief, an ambiguity is "patent" if it is "obvious, gross, or glaring," (quoting NVT Technologies v. United States, 370 F.3d 1153, 1162 (Fed Cir. 2004)). In the terms of the contract, it is the type of ambiguity which should be discovered by a reasonably prudent offeror. The specifications at issue in this case create no such ambiguity because the only reasonable conclusion to be drawn from them is that inspections would take place on site.

The government correctly states in its brief that "a difference in interpretation alone does not create an ambiguity," but rather in order to be considered, an interpretation must fall within a 'zone of reasonableness.'" (citing Dana Corp. v. United States, 470 F.2d 1032 (Ct. Cl. 1972). But the government makes no effort to explain why its own interpretation is reasonable. It offers no explanation as to why it makes sense to inspect trucks several blocks away from the entrance to the project before turning them loose into the public streets. The contracting officer's final decision offers no explanation as to why this is reasonable. Nor was any explanation offered before the Board. The government has still failed to address the issue before this Court even though it was directly raised in Plaintiff's Motion for Summary Judgment.

The reason for this failure is that the procedure is patently unreasonable. As explained above, No prudent offeror would expect this result, so there was no more duty to inquire as to the location of inspections than there was to ask whether Hitt would be allowed to use trucks to transport material from the site or whether it would have to use covered wagons given that the contract did not specifically provides for use of trucks.

The contract specifications are logically ambiguous with respect to the location of security inspections because they are consistent with both on-site and off-site inspections.

It is this ambiguity to which the project managers for Hitt and Anderson testified in deposition. The contract is not, however, legally ambiguous, as there is only one interpretation which falls within the "zone of reasonableness." That interpretation is that security inspections were to take place on site.

**IV. Hitt Does Not Seek Reformation of the Contract**

In its brief, the government argues that Hitt cannot recover for a mistaken assumption about the location of security inspections because to do so would require reformation of the contract. Hitt does not seek reformation of the contract. Hitt was entitled to assume that the inspections would take place on site just like it was entitled to assume it would be allowed to use trucks to remove material from the project site. While the specifications are silent on both points, there is only one reasonable interpretation.

**V. Conclusion**

In 16 pages of legal memorandum, the government never addresses the central issue in this case -- whether its interpretation of the contract is reasonable. Instead, it argues unconvincingly that Hitt should have realized that inspections would take place off site based on references to maps, instructions to coordinate deliveries with the Capitol Police, and references to other inspection stations which were stricken from the contract.

The idea that security inspections would be conducted anywhere but the entrance to the secure area flies in the face of common experience and common sense. Yet the government makes no effort to explain how any reasonable person would infer from the specifications that such a procedure would be implemented. The government's entire position rests on the premise that the contract's silence as to the location of security inspections gave it unfettered discretion. But as the government points out its own brief,

a contract interpretation must fall within the "zone of reasonableness" in order to be considered by the court. An interpretation of the contract's requirement that vehicles entering the project be subject to security inspections which would allow trucks to drive through the public streets of Washington, DC unattended for 15 minutes before entering the project site is not within the zone of reasonableness. The only reasonable interpretation is that inspections would take place at the entrance to the project site. The decision to move them to a remote location was a change to the contract, and Hitt is entitled to additional compensation.

Respectfully submitted,

/s/ M. Joseph Pierce
M. Joseph Pierce, Esquire
Kasimer & Annino, P.C.
7653 Leesburg Pike
Falls Church, VA 22043
Telephone: 703-893-3914
Facsimile: 703-893-6944
Email: jpierce@kasannlaw.com

Dated: May 20, 2008

**CERTIFICATE OF FILING**

I hereby certify that on the 20th day of May, 2008 a copy of the foregoing Plaintiff's Reply Memo was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ M. Joseph Pierce________

P:\Docs\Anderson\Hitt Contracting\AOC\Court of Claims\pleadingss\Reply Memo.052008.doc