# In the United States Court of Federal Claims

No. 07-823 C

Filed: September 29, 2008

*******************************************
| |
| --- |
| **HITT CONTRACTING, INC.** |
| |
| Plaintiff, |
| |
| v. |
| |
| **THE UNITED STATES,** |
| |
| Defendant. |

*******************************************

## OPINION

    This case is before the Court on cross motions for summary judgment based on the administrative record and review of the Government Accountability Office Contract Appeals Board's ("GAOCAB") decision in *Hitt Contracting, Inc.*, GAOCAB No. 2006-1 (HOBC) (May 30, 2007) [hereinafter GAOCAB Decision].  Hitt Contracting, Inc. ("Hitt") alleges that a contract it performed for the Architect of the Capitol ("AOC") was changed when the Capitol Police began requiring Hitt's subcontractor's dump trucks to go through security inspections six to seven blocks away from the project site.  The Government argues that the contract unambiguously allowed for the Capitol Police to conduct inspections on- or off-site, at the Capitol Police's discretion.  Hitt maintains that the only reasonable reading of the contract calls for inspections to take place at the project site.  Each party argues that the other side's interpretation is unreasonable.

    The Court finds both interpretations reasonable and the contract ambiguous.  The manner in which the contract documents amended language that had identified an off-site inspection station rendered the ambiguity a patent one.  Because Hitt cannot recover based on a patent ambiguity, the Court GRANTS Defendant's Cross-Motion for Summary Judgment ("Defendant's Motion") and DENIES Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion").

**I.     BACKGROUND**

On December 17, 2002, the AOC issued a request for proposals ("RFP") to expand the West Refrigeration Plant of the U.S. Capitol Power Plant in Washington, D.C.  GAOCAB Decision 2.  Several provisions in the RFP addressed site security and access.  *Id.*  Among the "Special Security Requirements," section 3.5 provided:

> All vehicles, and contents, used by the Contractor or his subcontractors, which enter or leave United States Government property during performance of the work, will be subject to clearance, inspection and identification procedures conducted by the United States Capitol Police.  Instructions and map(s) will be provided to the contractor upon award.

*Id.*  Another provision, section 1.4(b), stated that "[s]ite access for the Contractor shall primarily occur from Virginia Avenue with limited use of the service entrance from E Street.  All access shall be through guarded gates and allowed only to secure personnel."  *Id.*  A third provision, section 1.6, titled "Site Security," was modified by a February 3, 2003 amendment to the RFP.  *Id.* at 3.  That amendment revised section 1.6 by striking out one sentence and adding another, so that it read:

> 1.   All personnel entering the Capitol Power Plant grounds will be required to check in at a security gate.
> 2.   Clearance: Special arrangements for all deliveries shall be arranged a minimum of 48 hours in advance of arrival to permit inspection by the United States Capitol Police.  ~~The Police inspection station is on P Street and South Capitol Street S.E.~~  **Coordinate deliveries with the US Capital** [sic] **Police by contacting them at 202-224-0908.**
> 3.   All temporary security entrances established by the contractor must be coordinated with the United States Capitol Police.

Def.'s App. 74 (strikethrough and emphasis in original); GAOCAB Decision 2-3.  The solicitation also included an "Interpretations" clause requiring offerors to request clarification of any ambiguity that a reasonably prudent offeror would discover.  GAOCAB Decision 3.  Neither Hitt nor any other firm requested clarification regarding vehicle security inspections.  *Id.*  On March 24, 2003, the AOC awarded the contract to Hitt.  *Id.*  Hitt then subcontracted with The Anderson Company, L.L.C. ("Anderson") for excavation, site work, and building demolition.  *Id.*

At the time Anderson began performance, on or about May 22, 2003, vehicle security inspections occurred at the entrance to the project site.  *Id.*  Beginning on or about June 13, 2003, the Capitol Police required Anderson's trucks to be inspected six or seven blocks away.  *Id.* at 4.  Following inspection, the trucks were given placards showing the time of inspection, and were allowed fifteen minutes to travel to the project site.  *Id.*

In a letter dated June 13, 2003, Anderson notified Hitt that it considered the off-site inspections to be a contract change, adding at least thirty minutes to each round trip. *Id.* Hitt submitted a claim for additional costs, which the contracting officer denied on April 11, 2005. *Id.* On May 9, 2005, Hitt appealed to the GAOCAB. *Id.*

On May 30, 2007, the GAOCAB denied Hitt's claim, deciding that "the only reasonable reading of the solicitation and resulting contract is that vehicles intending to enter the project [s]ite were to be subject to security inspection by the U.S. Capitol Police in a manner and a place to be determined by that organization." *Id.* at 6. On November 26, 2007, Hitt filed its Complaint in this Court, seeking a ruling that the off-site inspections were a change to the contract. Compl. at 5. Both Hitt and the Government have moved for summary judgment.

## II.   DISCUSSION

### A.   Wunderlich Jurisdiction and Standard of Review

Hitt bases jurisdiction on the Wunderlich Act, 41 U.S.C. §§ 321-322. Compl. ¶ 3.[1] Under the Wunderlich Act, this Court reviews the GAOCAB's legal conclusions de novo and its "factual findings under the substantial evidence test." *Granite Constr. Co. v. United States*, 962 F.2d 998, 1001 (Fed. Cir. 1992); 41 U.S.C. § 321 ("any such [board] decision shall be final and conclusive unless the same is fradulent [sic] or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence"). Whether a contract provision was ambiguous, and if so, whether the ambiguity was patent or latent, are questions of law. *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004). When there are no genuine issues of material fact and one party is entitled to judgment as a matter of law summary judgment is appropriate. Rule 56(c) of the Rules of the United States Court of Federal Claims; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

### B.   The Contract was Patently Ambiguous.

Both Hitt and the Government argue that the contract was unambiguous, each claiming that the other party's reading is unreasonable. The Government argues, alternatively, that even if the contract was ambiguous, Hitt cannot recover because the ambiguity was a patent one. The Court agrees with the Government's latter argument, and grants summary judgment for Defendant.

---

[1] This contract is not covered by the Contract Disputes Act, 41 U.S.C. §§ 601-613, because the AOC is not an executive agency. *See* 41 U.S.C. § 602(a); 2 U.S.C. § 60-1(b)(2) (defining "officer of the Congress" to include the AOC).

### 1. Ambiguity

A contract contains an ambiguity if it is "susceptible to more than one reasonable interpretation." *Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 751 (Fed. Cir. 1999). When both parties' interpretations lie within the "zone of reasonableness," *id.*, as they do in this case, an ambiguity exists.

Neither party convinces the Court that the other party's interpretation is unreasonable. Both Hitt and the Government agree that the contract did not expressly specify a location for inspections. Pl.'s Mem. in Resp. to Def.'s Mot. ("Pl.'s Resp.") 1; Def.'s Mot. 8. Hitt argues that in the absence of an express provision for off-site inspections, interpreting the contract to allow for off-site inspections would be unreasonable. The Government argues that interpreting the contract to require on-site inspections would be unreasonable.

Hitt insists that the Capitol Police's off-site inspection procedure could not have been anticipated from the contract because the procedure was absurd:

> Conducting security inspections many blocks from the project site before leaving the inspected vehicles unsupervised on the streets of Washington, DC for up to 15 minutes is ridiculous. A driver with one accomplice could easily pick up explosives, weapons, or just about anything else on the way from the inspection station to the project site. While AOC would have been entitled to explicitly mandate such a procedure, it did not do so.

Pl.'s Mem. in Support of Mot. for Partial Summ. J. ("Pl.'s Mem.") 5-6. However, the contract did state explicitly that "[a]ll vehicles . . . which enter . . . Government property . . . will be subject to clearance, inspection and identification procedures conducted by the United States Capitol Police." Def.'s App. 73.

In arguing that the contract gave no reasonable indication that the Capitol Police's procedures could include off-site inspections, Hitt cannot overcome the fact that the solicitation originally expressly referenced an off-site inspection station. Hitt argues that "the fact that section 1.6 of the contract originally provided for use of an off-site inspection facility located at P Street and South Capitol Street does not indicate that inspections would take place off-site." Pl.'s Resp. 4. That language about the off-site facility was stricken from the contract prior to final bids. According to Hitt, a "reasonable contractor would assume that if a different off-site inspection facility had been identified, it would have been specified." *Id.* However, simply because another off-site inspection facility might not have been identified at that time does not mean that one would not later be identified and used. Upon seeing a reference to an off-site inspection facility, whether struck out or not, a reasonable contractor would not continue to assume inspections would take place on-site. Regardless of the prudence of the security inspection procedures, it is not unreasonable to read a contract that refers vaguely to police inspection procedures, and at one point actually identified an off-site inspection facility, as allowing for off-site inspections.

4

While Hitt fails to persuade the Court that the Government's reading is unreasonable, the Government also fails to demonstrate that Hitt's reading is unreasonable. Although it is reasonable to read the contract as permitting off-site inspections, it is also reasonable to read this contract and expect on-site inspections. After all, the contract discusses site access through guarded gates. Def.'s App. 75. General experience could lead one to expect security inspections on-site unless another procedure is specified. The language identifying an off-site inspection station might have been stricken because it was inapplicable, with inspections expected to take place at the project site.

The Government argues that the contract cannot reasonably be read to provide for on-site inspections because the solicitation stated that "[i]nstructions and map(s) will be provided to the contractor." Def.'s App. 73. That provision would be meaningless, the Government argues, because no map would be necessary if the inspections were to take place on-site. Def.'s Mot. 10. But as Hitt points out, "maps and instructions could have shown any number of things other than an off-site inspection location, including the location of the on-site inspections, the procedure for lining up for inspections, and the procedure and directions for leaving the inspection station." Pl.'s Mem. 6. Hitt's reading of the contract is reasonable, as is the Government's reading. The contract is ambiguous.

### 2. Patent Ambiguity

When a contract contains an ambiguity, the Court must determine whether that ambiguity was patent or latent. *Metric Constructors, Inc.*, 169 F.3d at 751. Patent ambiguities are obvious, gross, or glaring, and trigger a duty to inquire. *NVT Techs., Inc.*, 370 F.3d at 1162. A bidder who fails to inquire about a patent ambiguity cannot later recover based on it. *See id.*

Here, the ambiguity was a glaring one. Hitt failed to inquire, and therefore cannot recover now. However unclear the ambiguity might have been initially, it undoubtedly became patent when language referencing an off-site inspection station was struck out in an amendment to the solicitation and replaced with language about coordinating with the Capitol Police. Def.'s App. 74 ("~~The Police inspection station is on P Street and South Capitol Street S.E.~~ **Coordinate deliveries with the US Capital** [sic] **Police by contacting them at 202-224-0908.**") Contrary to Hitt's contention, striking out language specifying the location of an inspection station does not justify an assumption that there will be no off-site inspection station at all. Modification of this solicitation language created a glaring ambiguity as to whether inspections would be on- or off-site.

5

**III.    CONCLUSION**

The Government is entitled to summary judgment because the contract was patently ambiguous.  Defendant's Motion is GRANTED and Plaintiff's Motion is DENIED.  The Clerk is directed to enter judgment for Defendant.

                                             s/ Edward J. Damich
                                             EDWARD J. DAMICH
                                             Chief Judge